389 So.2d 1321 (1980)
STATE of Louisiana
v.
Clyde STEWART.
No. 67361.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
*1322 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Richard J. Petre, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Philip Brooks, Metairie, for defendant-appellant.
BLANCHE, Justice.
Defendant, Clyde Stewart, was indicted by a grand jury on December 21, 1979 for first degree murder in violation of La.R.S. 14:30. He pleaded not guilty and was tried by a jury of twelve persons on August 21, 1979. When the jury was unable to reach a verdict, the court declared a mistrial. Thereafter, on October 2, 1979, the indictment was amended to charge the defendant with second degree murder in violation of La.R.S. 14:30.1. A second jury trial was held on October 4, 1979 and defendant was found guilty as charged and sentenced to life imprisonment. On appeal, the defendant raises seven assignments of error.
The record from the trial court, as narrated by the witness, Anthony Green, reflects the following series of events which led to the defendant's arrest and conviction for second degree murder. On October 14, 1977, Anthony Alexander and Anthony Green, who were friends, met after work at the Hilton Hotel where Green was employed. From there, they proceeded to a local hamburger place for supper and afterwards, *1323 began walking to the intersection of Broad and Canal Streets to catch a bus home when they were stopped by two men who rode up beside them in an automobile. At gunpoint, they were ordered into the car and driven to the Almonaster Bridge in Eastern New Orleans. En route, they were ordered to strip off all of their clothing and to turn over all their money and jewelry to their captors. Upon arriving, Green was told by the passenger/defendant, who had possession of a pistol during the entire time of their ride, to lie face down on the ground outside for a time period that he variously estimated to be either 10, 20 or 30 minutes. Finally, Green was ordered back into the car and Alexander was ordered out of the car. While Green was in the car, which was occupied during that time by the driver, Alexander was outside with the passenger/defendant. A fight ensued between Alexander and the passenger/defendant which resulted in the defendant dropping the pistol. Upon the occurrence of this event, both Green and the driver scrambled out of the car in an attempt to retrieve the fallen pistol. The driver succeeded, and proceeded to shoot Green who, while fleeing, shouted for his friend Alexander to do likewise. The wounded Green's flight led him to some bushes where he hid, and from where he heard three shots and saw the perpetrators drive off. When he returned to the scene, he found his friend, Alexander, dead. Green then wrapped some clothes around himself and, being unable to get anyone to stop, walked to a friend's house and called the police. That night, Green explained the events which had occurred to the police and viewed some mug shots of persons whom the police thought may have been involved. Green was unable to make an identification.
Thirteen months later, Green was notified that the police had a suspect and was again asked to view some mug shots. On November 24, 1978, this photographic lineup was conducted at the police station with Green and one officer, Detective Hoyt, present. According to Green, after one to two hours of examining the six photos, he identified the defendant as the passenger who held the gun on them and who participated in the robbery and subsequent murder of Alexander. The defendant was subsequently arrested for first degree murder.
One month later, on December 19, 1978, Green again identified the defendant as the passenger at a six-person physical lineup at the police station. Defendant was then indicted by the grand jury for first degree murder and, ultimately, convicted of second degree murder.
Defendant raises the following assignments of error in connection with his conviction.

Assignment of Error Number 1
Defendant contends his conviction should be reversed because the trial court failed to suppress the evidence and/or testimony at trial relating to the November 24, 1978 photographic lineup identification of the defendant on the basis of its suggestive nature.
To decide whether to suppress identification testimony one must balance the reliability of such identification against the corrupting influence of the suggestive identification itself. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Reliability is seen by examining the five factors set forth in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which are articulated in Manson, supra, and followed by this Court. State v. Guillot, 353 So.2d 1005 (La.1977). As applied to this case, the factors reveal: (1) Opportunity of the witness to view the criminal at the time of the crime. Green's testimony is that the two perpetrators drove Alexander and him around for 1½ hours with the passenger/defendant holding a gun and facing them as they sat in the rear seat. Green said he could see the defendant's face because of the traffic and street lights. After the crime, he described the defendant as a black male with a black hat, wearing a black Levi suit, and having pock marks on his face. This thorough description reveals Green could clearly see the defendant. (2) The witness' degree of attention. Green testified that he paid close attention to the defendant as the defendant *1324 was pointing a large gun (he thought it was a .45 revolver) from a distance of 1 to 1½ feet at him for the entire ride. Green said he saw not only the gun, but the defendant's face as well. (3) The accuracy of his prior description. Green gave a description on the night of the crime of the defendant as a black male with pock marks on his face. This description complies with the ultimate identification of the defendant. (4) The level of certainty demonstrated at the confrontation. Although Green testified that it took him one to two hours to positively identify the defendant after examining the six photos, his time estimate may be compared with the 1½ hour estimate he gave of the time it took his captors to drive the victim and him from Canal and Broad Streets to the Almonaster Bridge, a normal 20-minute ride at night, according to Detective Hoyt. Furthermore, the police officer present at the photographic lineup testified that it only took Green three to five minutes to make the identification. We are not impressed with Green's ability to gauge time but, nevertheless, if it did take Green the length of time which he claims he took to make the identification, this delay may just as easily be attributed to his diligence as to his failure to be certain. Green was positive in his identification of the defendant at the photographic lineup. (5) The time between the crime and the confrontation. Thirteen months is, in our judgment, a long time to remember a face, but Green testified he could positively identify the defendant. The jury evidently believed his identification was reliable even though Green candidly admitted the time factor did give him trouble.
We conclude that a cumulation of the five factors shows the identification was reliable. Balanced against the reliability is the suggestiveness of the photographic lineup, and we find the photographic lineup procedure was not suggestive in any manner.
Green was called to the police station to view a photographic lineup because the police believed they had a suspect. This, in itself, does not constitute suggestiveness, for it is generally assumed if one is called to examine a photographic or physical lineup that there is a suspect in the crowd. State v. Knight, 323 So.2d 765 (La. 1975); State v. Curtis, 363 So.2d 1375 (La. 1978).
Green also testified that no threats or intimidation were used to obtain the identification. Detective Hoyt was the only other person in the room during the identification and he never suggested a particular photograph should be selected.
Lastly, the defense argues the photographic lineup was overly suggestive because the defendant was the only subject with a pock marked face. This is not correct, as an examination of the six photographs reveals several of the subjects have pock marks and/or scars on their faces.
This assignment is without merit.

Assignment of Error Number 2
Defendant contends his conviction should be reversed because the trial court failed to suppress the evidence and/or testimony at trial relating to the November 24, 1978 photographic lineup identification on the basis that the defendant was not represented by legal counsel.
The general rule is that a defendant is not entitled to be represented by an attorney during a pre-trial, post-indictment photographic lineup. United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). In State v. Cass, 356 So.2d 936 (La.1977), this Court held in accordance with the United States Supreme Court's decision in Ash, supra, in finding that a criminal defendant does not have a constitutional right to have counsel present at photographic displays conducted by the state for the purpose of attempting to secure an identification of the perpetrator of a crime.
Here, the defendant contends that the length of time which transpired between the crime and the photographic lineup was sufficient to change the nature of the investigation to accusatory, thereby requiring the attendance of counsel. The record clearly shows that at the time the photographic *1325 lineup took place the defendant had neither been arrested nor indicted. Furthermore, merely being a suspect does not place the defendant in the same accusatory station as being the subject of an indictment which, in itself, does not provide the defendant with the right of counsel at a photographic lineup per Ash, supra. We find no merit in the defendant's contention that his situation presents a set of facts sufficient to deviate from the general rule.
This assignment is without merit.

Assignment of Error Number 3
Defendant contends his conviction should be reversed because the trial court failed to suppress the evidence and/or testimony at trial relating to the physical lineup identification of the defendant on December 19, 1978, on the basis of its suggestive nature.
The lineup itself was not suggestive as all of the six subjects were of the same race, similar in appearance and stature to the defendant, and were all dressed in identical uniforms. The defendant was allowed to choose his position and to tell the other subjects where to stand. None of the subjects used in the photographic lineup, except the defendant, was used in the physical lineup. The witness, Green, sat alone and pointed out the defendant without any coercion, suggestions or assistance from the police or anyone else.
The only possible questionable aspect of the physical lineup was that, not only did Green give a positive identification of suspect # 2 as the passenger/defendant, but he also gave a tentative identification of suspect # 4 as the other perpetrator, i. e., the driver who scrambled with Green for possession of the pistol. The trial testimony reveals that the officer conducting the physical lineup, Detective Richards, did not know if any other prospect was arrested for the crime except the defendant, and had no knowledge that the lineup participant tentatively identified by Green as the other perpetrator of the crime, was in any way connected with the crime. While the record does not reflect this, the implication was that the person (subject # 4) identified by him was never charged with having committed the crime. Nevertheless, this second identification was only tentative, for as Green testified, he was not positive only as to the identity of subject # 4 as the driver. He remained positive of the identification of subject # 2 as the passenger/defendant.
We conclude the physical lineup was not suggestive in any manner, and the positive identification of the defendant by the witness was a reliable one.
This assignment is without merit.

Assignment of Error Number 4
Defendant contends his conviction should be reversed because the trial court failed to suppress the evidence and/or testimony at trial relating to the physical lineup identification of the defendant on December 19, 1978 on the basis that he was not represented by legal counsel.
At the time of the physical lineup the defendant had been arrested, but he was not indicted until two days after the physical lineup. In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court held that the presence of counsel at a pre-indictment lineup was not a requirement of due process. This Court has followed Kirby in a number of decisions: State v. Hargrove, 330 So.2d 895 (La.1976); State v. Johnson, 327 So.2d 388 (La.1976); and State v. Smith, 357 So.2d 798 (La. 1978).
Furthermore, a good faith effort, though not required, was made on the part of the police to notify counsel of their intention to hold a physical lineup. Detective Richards testified that he contacted the Office of Indigent Defender Program and informed them of the state's intention to conduct a physical lineup, but no one from that office showed up. Defendant was not entitled to representation at the pre-indictment lineup, but the police still made a good faith effort to see that he was so represented.
This assignment is without merit.

Assignment of Error Number 5
Defendant contends his conviction should be reversed because the verdict of *1326 second degree murder is contrary to the law and the evidence, contending that the evidence was insufficient to prove the defendant was guilty beyond a reasonable doubt. There is direct evidence of the defendant's guilt, as the state's case was built upon the positive identification by the witness, Green, of the passenger/defendant. Said identification first occurred in a proper photographic lineup, was confirmed at a proper physical lineup, and was absolute at trial. The state has shown the lineups were not suggestive and the witness' identification was reliable (as discussed in Assignments of Error Numbers 1 and 3). Were we to accept the defendant's contention we would, in fact, be substituting our judgment for that of the trier of fact as to Green's identification when there was "some evidence" of the defendant's guilt from which any rational trier of fact, after hearing the evidence on this issue, could have believed that Green's identification of the defendant was reliable.[1]
This assignment is without merit.

Assignment of Error Number 6
Defendant contends his conviction should be reversed because the trial court denied the defendant's motion to quash the indictment on the basis of the state's amendment of the grand jury indictment from first degree murder to second degree murder.
Art. 1, § 15 of the 1974 Louisiana Constitution provides that "no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by grand jury," also see La.C.Cr.P. art. 382. Under the law applicable to the defendant, second degree murder is a crime punishable by life imprisonment and, therefore, is a crime the prosecution of which must be instituted by grand jury indictment. State v. Stevenson, 334 So.2d 195 (La.1976).
However, district attorneys are empowered to amend indictments to charge lesser offenses. State v. Gilmore, 332 So.2d 789 (La.1978). The state may abandon the charge of a greater crime and proceed with prosecution for the lesser crime and no formal indictment is necessary for that purpose. State v. Edwards, 287 So.2d 518 (La. 1973). Obviously, the state can, by formal amendment, do what it also can do with no formal indictment change.
Concerning the amendment of an indictment, this Court recently allowed the district attorney to amend the charge from first degree murder to second degree murder after the trial began, but before the first prospective juror was called. State v. Davis, 385 So.2d 193 (La.1980). This is to be distinguished from the situation in State v. Donahue, 355 So.2d 247 (La.1978) where the district attorney nolle prosequied a first degree murder indictment and reinstituted the prosecution by a bill of information. In the present case, the defendant was indicted for first degree murder by a grand jury. The assistant district attorney then properly amended the charge to the lesser included offense of second degree murder before the trial began.
This assignment is without merit.

Assignment of Error Number 7
Defendant contends his conviction should be reversed because the trial court denied his motion to quash the indictment on the basis of the state's failure to furnish a sufficient bill of particulars.
In its motion to produce, the defense asked the state to furnish any oral statements made by the defendant which were to be introduced in evidence and to give the names and addresses of all of the witnesses known by the state to possess knowledge of the crime.
Before the trial the state gave notice of its intention to offer in evidence an oral statement made by the defendant to Louise Armstrong on October 17, 1977 in her apartment in compliance with La.C.Cr.P. *1327 art. 768. However, the state did not use her at trial, nor allude to said statement in any manner.
As to the request for the names and addresses of the state's witnesses, the state replied that the defendant was not entitled to this information. State v. Thornton, 351 So.2d 480 (La.1977). As a practical matter, the court has recognized that this information becomes available on the public record when the subpoenas and returns are filed with the clerk of court. State v. Hudson, 361 So.2d 858 (La.1978).
Besides furnishing sufficient answers to the defense requests, it appears the defense was already adequately satisfied with the answers. At a February 2, 1979 hearing for answers to the bill of particulars and motion to produce, the defense counsel, Mr. Philip S. Brooks, stated:
"All right, if the court pleases, we are satisfied to [sic] the answers to the bill of particulars and the motion to produce."
This assignment is without merit.
For these reasons, the seven assignments of error made by defendant are without merit and defendant's conviction and sentence are affirmed.
AFFIRMED.
DIXON, C. J., concurs with reasons.
LEMMON, J., dissents and assigns reasons.
DIXON, Chief Justice (concurring).
I respectfully concur, believing the treatment of Assignment No. 5 is incorrect.
LEMMON, Justice, dissenting.
This decision should be reversed because the eyewitness identification is so unreliable that it violates due process.
Thirteen months after the crime the victim was requested "to look at pictures to see if I could make an identification", because "they had some evidence that could link this person to this (the crime)". This statement to the victim was unduly suggestive.
There is a vast difference between telling an eyewitness called to view a line-up that "we have a suspect" and that "we have someone linked by other evidence to the crime". The latter statement virtually tells the eyewitness "we have the perpetrator". Under such circumstances the eyewitness, instead of being free to determine whether or not any of the persons shown is the perpetrator, is pressured into deciding which of the persons shown is the perpetrator.
This suggestiveness alone, arguably, did not so substantially increase the likelihood of misidentification as to violate due process. However, under the totality of circumstances a very substantial likelihood of irreparable misidentification exists in this case.
The identification was 13 months after the crime. According to the victim, about an hour elapsed from the time he looked at the photographs until he made the identification. He also admitted he had "considerable trouble" and "[i]t was quite hard for me to remember".
At the subsequent physical line-up, fortified by the questionable photographic identification, the eyewitness positively identified defendant as one perpetrator, but also positively identified a second person in the line-up as the other perpetrator. The undisputed error in the contemporaneous identification of the second perpetrator casts further substantial doubt on the eyewitness' questionable identification of defendant.
In my opinion the motion to suppress should have been granted.
NOTES
[1] Whether we use our traditional "some evidence" standard of review, State v. Main Motors, 383 So.2d 327 (La.1979) and State v. Entertainment Specialists, 386 So.2d 653 (La. 1979), or the standard of review espoused in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), our result would be the same.