403 So.2d 706 (1981)
STATE of Louisiana
v.
David M. HARVILL.
No. 81-KA-0213.
Supreme Court of Louisiana.
September 8, 1981.
*707 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles Bice, Dist. Atty., Douglas H. Allen, Kermit Simmons, Asst. Dist. Attys., for plaintiff-appellee.
Martin S. Sanders, Jr., Herman A. Castete, of Sanders & Castete, Winnfield, for defendant-appellant.
STOKER, Justice Ad Hoc.[*]
David M. Harvill was charged by bill of information with simple burglary, in violation of LSA-R.S. 14:62. Following trial before a six-member jury, defendant was convicted and sentenced to six years' imprisonment at hard labor. By this appeal, defendant urges four assignments of error as grounds for reversal of his conviction and sentence.
Upon returning from evening church services on October 31, 1979, Floyd Stroud discovered six rifles missing from his Winn Parish home. Stroud reported the apparent thefts to local law enforcement authorities, whose investigative efforts eventually led them to question the defendant, a suspect detained at the Grant Parish jail on unrelated burglary charges. In a taped interview, defendant admitted entering the Stroud residence for the express purpose of stealing Stroud's hunting rifles. At trial, this confession formed the entirety of the prosecution's case against the defendant.
*708 Testifying during the State's voluntariness predicate, LSA-R.S. 15:451, Winn Parish Deputy Sheriff Arnold Fredericks stated that he and Deputy Glen Mixon had interviewed the accused at the Grant Parish Sheriff's Department on November 13, 1979. Fredericks then identified a printed Miranda card which he claimed to have read to the accused prior to interrogation. This card contained a detailed explanation of the accused's right to remain silent and his right to assistance of counsel. Though defendant was never directly asked to waive these rights, both Fredericks and Mixon testified that defendant appeared to understand their explanation and that he freely accepted their invitation to discuss his complicity in the Stroud burglary. According to Fredericks, no force or intimidation was ever used, and no threats or promises were ever made to induce defendant's participation in the interview.
Following this conversation, defendant's responses were tape recorded. Later a formal transcription of the interview was brought to the Grant Parish Jail for defendant's verification. Deputy Fredericks watched as the accused read the typed statement and then witnessed his signature thereto; defendant also initialed each page of the statement. On the basis of this evidence, the trial court ruled the accused's confession voluntary and permitted its introduction into evidence.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
By these initial assignments, defendant complains that he was not given the warnings required by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) prior to the tape recording of the statement implicating him in the Stroud burglary.
At trial, defendant was permitted to testify before the jury regarding the free and voluntary nature of his confession, without being cross-examined as to other aspects of the case. State v. Lovett, 345 So.2d 1139 (La.1977).[1] Defendant conceded that Deputy Fredericks had mentioned the right to counsel immediately prior to taping his confession, but denied ever having been advised of his rights to remain silent or his right to halt the interrogation at any time. The transcript of defendant's statement does not, on its face, reflect that the accused was advised of these rights.
On appeal, defendant argues that the absence of a recorded enumeration of the Miranda warnings rendered his subsequent taped confession inadmissible. The defense in brief does not dispute the fact that Deputy Fredericks had previously advised the accused of his rights, but instead characterizes the taped interview as a second distinct interrogation session which mandated an independent explanation of the Miranda warnings. Defendant further argues that the trial court erred in admitting a Miranda card in order to evidence a prior advice of rights which bore no relation to his taped statement.
In Miranda v. Arizona, supra, the United States Supreme Court held that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." See also La. Const.1974, Art. I, § 13. Specifically, the detained individual must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The Court found these safeguards necessary to combat the inherently compelling pressures which "work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda v. Arizona, supra.
However, neither Miranda nor its progeny has ever accepted the construction *709 urged by defendant. In the case at bar, the interrogating officer testified that he read defendant his Miranda rights from a card, which was later identified and filed into evidence. This card detailed the entire panoply of Miranda rights, including defendant's right to remain silent and assistance of counsel. Absent some significant break in the interrogation process, such as a specific request for assistance of counsel, repetition of these warnings prior to the taping of defendant's statement is not required.[2] A requirement that the Miranda warnings be repeated before each separate interrogation period would quickly degenerate into a formalistic ritual.
Nevertheless, mere recitation of Miranda warnings is not sufficient to permit admission of an accused's statement at trial. As the Miranda court noted:
"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.
"... an express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a valid waiver. But a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." 384 U.S. at 475, 86 S.Ct. at 1628.
There was no explicit oral or written waiver of rights in this case. Deputy Fredericks testified that defendant "appeared" to understand the Miranda warnings, but conceded that defendant was never specifically asked to waive these rights. Nevertheless, the Supreme Court has recently recognized that a waiver of Miranda rights need not be explicit but may be inferred from the actions and words of a person interrogated. North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). In that case the court said:
"An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. As was unequivocally said in Miranda, mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecutor's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."
Waivers of Miranda rights are matters depending upon "the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); North Carolina v. Butler, supra, and Edwards v. Arizona, ___ U.S. ____, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).
In this case, the twenty-three year old defendant testified that he was unable to read. He denied ever having been advised of his rights by Deputy Fredericks and further claimed that his confession had been procured only in face of promises that his girlfriend and his brother would not be arrested. These allegations were thoroughly refuted by the prosecution. Deputy Fredericks and Deputy James Jordan both testified that defendant had read the transcribed version of his statement prior to signing it. Defendant even conceded that he had received a sixth grade education, *710 adding that the last school which he had attended was "Buras High." During rebuttal, Deputies Fredericks and Mixon specifically denied making any promises to the accused concerning his family and friends. The officers' earlier testimony that defendant appeared to understand his rights was corroborated at the close of the accused's statement:
"Q. David, this statement that I just took from you, did you make it of your own free will?
A. Yes sir.
Q. You understand your rights?
A. Yes sir.
Q. That you didn't have to tell us anything if you didn't want to?
A. Yes sir.
Q. You make this statement just to get things cleared up?
A. Yes sir.?"
We feel that the above quoted portion of defendant's taped statement indicates a knowing and intelligent waiver by defendant. This coupled with the absence of any specific allegations of coercive measures or intimidation is sufficient to satisfy the implicit waiver requirement of Butler.

ASSIGNMENT OF ERROR NO. 3
By this assignment, defendant argues that the trial court erred in refusing to declare a mistrial when the prosecutor made reference to his failure to testify.
The evidence linking defendant to the instant burglary consisted solely of the accused's taped confession. The victim did not identify the defendant as the burglar and the stolen rifles were never recovered. Defense counsel's closing argument sought to capitalize on the deficiencies in the State's case by focusing solely on the involuntary character of the accused's confession. In rebuttal, the prosecutor emphasized the failure of the defendant's statement itself to corroborate his claims of inducement:
"You have heard a lot of testimony here today about rights and all the things that he was told and wasn't told him and everything else. Think of some of the other things you have heard today. You read the statement. Do you see anywhere in there a complaint from Mr. Harvill of mistreatment? Do you see anywhere in there an indication that, thank you, you are not going to charge me with this crime because I made this statement. Did you hear one word up here today that said it wasn't true. One word. You didn't. I submit to you that we have proved the offense of simple burglary." (Emphasis added). Tr. pp. 123-124.
At this point defense counsel objected and unsuccessfully requested a mistrial.
Reurging this motion on appeal, defendant relies on LSA-C.Cr.P. art. 770, which provides, in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument refers directly or indirectly to:
. . . . . .
"(3) The failure of the defendant to testify in his own defense;
. . . . . .
"An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial...."
This rule is designed to safeguard a defendant from unfavorable inferences which might otherwise be drawn from his silence, thereby implementing the Fifth Amendment's protection against self-incrimination. State v. Fullilove, 389 So.2d 1282 (La.1980); Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Under the LSA-C.Cr.P. art. 770, any reference by the prosecution to the accused's failure to take the stand, whether direct or indirect, constitutes grounds for mistrial.[3]
*711 Prosecutorial comments regarding the lack of refuting evidence produced by the defense have not generally been construed as prohibited references to the accused's silence since such remarks focus upon the entirety of the defense evidence. State v. Perkins, 374 So.2d 1234 (La.1979). If, however, the defendant is the only one who can dispute the State's evidence, then "a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify." State v. Perkins, supra. See also United States v. Buege, 578 F.2d 187 (7th Cir. 1978).
In this case the defendant's taped confession was the State's entire proof. The prosecutor's reference to the unrebutted character of the State's evidence was clearly a comment upon the failure of the defendant to testify in his own defense, as only the defendant could recant the taped confession which formed the entirety of the prosecution's case against him.
In commenting as he did, the prosecutor violated the prohibition of LSA-C.Cr.P. art. 770. The trial court's refusal to grant the requested mistrial was erroneous.

ASSIGNMENT OF ERROR NO. 4
In his final specification of error, defendant urges the total lack of evidence to establish venue of the alleged offense within Winn Parish. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Though not previously urged below via either motion for new trial or motion for acquittal, this issue has been preserved for review on appeal by defendant's present assignment of error. State v. Temple, 394 So.2d 259 (La.1981); State v. Peoples, 383 So.2d 1006 (La.1980).
It is well-established that the prosecution must establish beyond a reasonable doubt that the charged offense was committed within the parish where the prosecution was held. State v. Atkins, 360 So.2d 1341 (La.1978); State v. Hollingsworth, 292 So.2d 516 (La.1974); State v. Paternostro, 224 La. 87, 68 So.2d 767 (1954). In the case at bar, the bill of information alleges that defendant committed a simple burglary of a dwelling belonging to Harold Stroud. As regards the whereabouts of the allegedly burglarized structure, Stroud was questioned as follows:
"Q. Mr. Stroud, on that date, specifically October 31st, 1979, did anything unusual occur at your home?
A. Yes, sir. We went to church and when I come back from church I noticed the door to the ... the bedroom door was open where I kept my guns and I turned the lights on to see why the door was open and the guns was gone.
Q. This is at your home in Winn Parish, correct?
A. That's right."
This testimony discharged the State's burden of proof with regard to venue.
For the reasons given in the discussion of assignment of error number 3, defendant's conviction and sentence are reversed and the case is remanded to the district court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
WATSON, J., dissents.
BLANCHE, J., dissents for reasons assigned.
MARCUS, J., dissents and assigns reasons.
BLANCHE, Justice (dissenting).
I respectfully dissent. In this writer's opinion, the words used simply do not focus upon the defendant's failure to take the stand. Assuming, however, that it was an indirect reference to his failure to take the stand prior decisions of this Court hold that the inference must be plain "that the remark was intended to bring to the jury's *712 attention the failure of the defendant to testify." A fair reading of the remark made by the prosecution was not a plain reference to the defendant's failure to take the stand.
This writer construes the remark as an attempt to influence the jury of the strength of the state's case rather than to refer to the defendant's failure to take the stand.
MARCUS, Justice (dissenting).
I dissent. See my dissent in State v. Fullilove, 389 So.2d 1282 (La.1980), and State v. Perkins, 374 So.2d 1234 (La.1979).
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker, and P. J. Laborde, of the Court of Appeal, Third Circuit, participated in this decision as Associate Justices ad hoc, joined by Chief Justice John A. Dixon, Jr., and Associate Justices Walter F. Marcus, Jr., Fred A. Blanche, and Jack C. Watson.
[1] This aspect of State v. Lovett has been legislatively overruled. See LSA-C.Cr.P. art. 703(E). The statute withstood constitutional attack in State v. Day, 391 So.2d 1147 (La. 1980).
[2] United States v. Springer, 460 F.2d 1344 (7th Cir. 1972); Miller v. United States, 396 F.2d 492 (8th Cir. 1968); Puplampu v. United States, 422 F.2d 870 (9th Cir. 1970). See also State v. Scott, 355 So.2d 231 (La. 1977).
[3] An older line of cases, originating with State v. Howard, 262 La. 270, 263 So.2d 32 (La.1972) and State v. Reed, 284 So.2d 574 (La.1973), suggested that only direct references to the accused's failure to take the stand constituted grounds for reversal on appeal. However, these holdings were clearly contrary to the express language of LSA-C.Cr.P. art. 770 and are no longer followed. See State v. Fullilove, 389 So.2d 1282 (La.1980) and State v. Perkins, 374 So.2d 1234 (La.1979).