447 So.2d 1229 (1984)
STATE of Louisiana
v.
Daryl BOUTTE.
No. 83 KA 673.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
*1230 Cornelius E. Regan, William C. Credo, III, Asst. Dist. Attys., John M. Mamoulides, Dist. Atty., 24th Judicial District, Gretna, for plaintiff-appellee.
John H. Craft, Joseph L. Montgomery, 24th Judicial District Indigent Defender Board, Gretna, for defendant-appellant.
Before KLIEBERT, BOWES and CURRAULT, JJ.
KLIEBERT, Judge.
Defendant, Daryl Boutte, was indicted by a grand jury for aggravated rape in violation of R.S. 14:42, aggravated crime against nature in violation of R.S. 14:89.1, and aggravated burglary in violation of R.S. 14:60. He pleaded not guilty and was tried by a jury of twelve persons and found guilty as charged on May 11, 1983. Subsequently, he was sentenced to life imprisonment on the aggravated rape charge, 15 years at hard labor on the aggravated crime against nature charge, and 30 years at hard labor on the aggravated burglary charge.
It is from this conviction and sentence that the defendant now appeals. On appeal, the defendant originally raised five assignments of error. Three of the five assignments of error were not briefed and under rule 2-12.4 of the uniform rules of the courts of appeal and State v. Dirden, 430 So.2d 798 (La.App. 5th Cir.1983), those assignments of error are considered as abandoned.
The record reflects the following series of events which led to defendant's arrest and convictions. On January 21, 1982, at about 8:00 o'clock P.M., a nurse at Charity Hospital in New Orleans and a doctor were abducted at gunpoint by two men. They were ordered into the doctor's car and driven to the nurse's apartment in Metairie, Louisiana. En route, the nurse was ordered to turn over all of her money and jewelry. Upon arriving there, the nurse was led upstairs in the apartment to turn on all the lights to make sure no-one else was in the apartment. The doctor was then led upstairs and tied up. The two men then brought the nurse downstairs and told her to take all of her clothes off. The shorter man then turned on the light downstairs and forced the nurse to have oral sex with him.
The taller subject then undressed and forced the nurse to have sexual intercourse with him. The two men then ransacked the apartment and left with jewelry, a television set and a camera, after tying up the nurse. The nurse and doctor then notified the police.
On the night of the incident, the victims were shown approximately 50 photographs of suspects, but no identification was made. On April 7, 1982, the victims were shown a large posterboard with twelve photographs; one of which was a photograph of the defendant, and six other loose mug shots. Again, the victims did not identify anyone and the doctor stated that he preferred to view any suspects in person rather than making identification merely from photographs.
On April 23, 1982, a lineup was conducted at the Jefferson Parish Correctional Center. Six males, including the defendant, participated in the lineup. The nurse and doctor were kept apart during the lineup and each independently picked out the defendant as being the shorter of the men who had abducted them on January 21, 1982. No suggestion was made as to the defendant's identification, however, the victims were told that a suspect would be in the lineup. In addition, the jumpsuit worn by the defendant during the lineup was the only one with writing on the back and was therefore distinguishable from the other jumpsuits worn by the other participants in the lineup.
Assignment of Error No. 1.
Defendant contends that his conviction should be reversed because the trial court failed to suppress the evidence and/or testimony at the trial relating to the April 23, 1982 lineup on the basis of its suggestive nature.
*1231 In deciding whether to suppress identification testimony, we must balance the reliability of such identification against the corrupting influence of the suggestive identification itself. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). State v. Stewart, 389 So.2d 1321 (La.1980). There are five factors used to determine the reliability of an identification. These are set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and have been followed by our courts. State v. Guillot, 353 So.2d 1005 (La.1977); State v. Stewart, supra.
Applying the five factors to this case reveals the following:
1. Opportunity of the witness to view the criminal at the time of the crimeBoth victims testified that their abduction and the subsequent events which took place at the nurse's apartment lasted approximately one hour. The nurse was forced to ride in the doctor's car in the middle of both subjects, and although it was nighttime, both victims had a substantial opportunity to view the defendant while the light was turned on in the car and subsequently at the nurse's apartment after the lights were turned on there.
2. The witnesses' degree of attention Due to the nature of the crimes involved and the manner in which they were carried out, the fact that the victims were verbally threatened by both subjects and the fact that both victims testified that they saw the defendant face-to-face, it is clear that both victims' degree of attention focused on the defendant as well as his accomplice.
3. The accuracy of the victims' prior descriptionThe description of the defendant given by the victims to the police on the night of the crime corresponds with the ultimate identification of the defendant.
4. The level of certainty demonstrated at the confrontationAlthough the victims did not positively identify the defendant as being one of the perpetrators when they were shown a photograph of the defendant on April 7, 1982, the victims testified that they preferred to see any suspects in person before making a positive identification. At the physical lineup conducted on April 23, 1982, both victims were positive in their identification of the defendant which were made independently of each other. In addition, the nurse identified the defendant almost immediately upon seeing him in the lineup.
5. The time between the crime and confrontationOnly three months had elapsed between the time of the crime and the physical lineup and both victims testified that they could positively identify the defendant.
The defendant claims that the lineup was suggestive since the victims were told that a suspect would be in the lineup. This, in itself does not constitute suggestiveness, for it is generally assumed that when one is called to examine a physical lineup there is a suspect in the crowd. State v. Stewart, 389 So.2d 1321 (La.1980); State v. Knight, 323 So.2d 765 (La.1975). The defense further argues that the lineup was suggestive since the defendant's jumpsuit was different from the other jumpsuits worn by the other participants in the lineup. It has been held that:
An error is harmless if there is little likelihood that it would have changed the result. It must be clear beyond a reasonable doubt that the constitutional error did not contribute to the conviction. Chapman v. California, 386 U.S. 18, 87 Sup.Ct. 824, 17 Law. Ed. [2d] 705 (1967); State v. Gibson, 391 So.2d 421 (La.1980).
The jury obviously believed that the identification of the defendant was reliable. We also conclude that a cumulation of the five factors shows that the identification of the defendant was reliable. Further, we note the people who partook in the lineup were selected by the defendant and the jumpsuit he wore was selected by him. Balanced against the reliability is the defendant's contentions of suggestiveness in the physical lineup. We find that the reliability far outweighs any suggestive nature of the lineup.
In the other assignments of error, the defendant contends that the trial court *1232 committed reversible error by denying the defendant's motion for a mistrial based upon statements made by the prosecutor in closing arguments. This assignment of error is based upon Article 770 of the Louisiana Code of Criminal Procedure which provides in part as follows:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney or a court official, during the trial or in argument, refers directly or indirectly to:.... (3) the failure of the defendant to testify in his own defense;
In closing argument to the jury, the prosecutor said, "Ladies and gentlemen, there has been no evidence to rebut the crimes that happended to (the nurse and the doctor)".
In order to mandate a mistrial, the inference must be plain that the remark was intended to bring to the jury's attention the failure of the defendant to testify. State v. Smith, 433 So.2d 688 (La.1983); State v. Johnson, 426 So.2d 95 (La. 1983); State v. Burkhalter, 428 So.2d 449 (La. 1983); State v. Stephenson, 412 So.2d 553 (La.1982).
In our view, the prosecutor's remarks were not intended to direct the jury's attention to the failure of the defendant to testify but, rather, were directed to the lack of evidence to negate the fact that the crimes involved were in fact committed.
The defendant, in his brief, relied on State v. Harvill, 403 So.2d 706 (La.1981). In Harvill, the State's entire case was the defendant's taped confession and the Court held that the prosecutor's remarks concerning the lack of evidence to rebut the confession were clearly intended to be a comment upon the failure of the defendant to testify in his own defense to recant the confession. The facts in the case at bar are substantially different from the Harvill case and thus, the defendant's reliance on Harvill is misplaced. This assignment is without merit.
For the foregoing reasons, the conviction and sentence of the defendant, Daryl Boutte, are affirmed.
AFFIRMED.