473 So.2d 380 (1985)
STATE of Louisiana
v.
Frank J. SEPCICH.
No. 84-KA-244.
Court of Appeal of Louisiana, Fifth Circuit.
July 8, 1985.
*383 John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Asst. Dist. Atty., Louise Korns, of counsel, Gretna, for plaintiff-appellee.
John H. Craft, Gretna, for defendant-appellant.
Frank J. Sepcich, through Dora Rabalais, Angola.
Before KLIEBERT, BOWES and GAUDIN, JJ.
KLIEBERT, Judge.
On August 9, 1983, defendant, Frank J. Sepcich, was charged by bill of information with armed robbery, in violation of La.R.S. 14:64. On October 11th and 12th, 1983, he was tried before a twelve (12) person jury who found him guilty as charged. The court ordered a presentence investigation report and on December 14, 1983 the court sentenced defendant to serve fifty (50) years at hard labor, the first ten (10) years to be without benefit of parole, probation or suspension of sentence.
Defendant now appeals from this conviction and sentence, urging nineteen (19) assignments of error in a pro se brief.
The trial of this matter revealed the following facts. On June 13, 1983, at approximately 9:30 P.M., the defendant entered the K and B Drugstore on the Westbank Expressway in Westwego, Louisiana, pointed a shotgun at David Sousa, the clerk standing at the back prescription counter register, and ordered everyone to hit the floor. He then went behind the counter and took money from the cash register. Also, he then pointed the shotgun at the pharmacist, Barry Smith, and ordered him to empty all of his Schedule "A" drugs, specifically Dilaudid, into a bag and give it to him. During trial Sousa testified that the drugs and approximately $300.00 were taken during the robbery. Three other store employees, Sherri Allen, David Stockstill and Brenda Green, observed the defendant during the robbery. At first he attempted to leave through the front door but encountered and pointed his gun at police officer Charles Adams, Jr., who had been in the K & B parking lot when advised of the in-progress robbery and who took cover when the gun was pointed at him. After forcing David Sousa and David Stockstill to open the rear door for him, the defendant escaped through the rear door.
Police Officer, Jim Murphy, whom Officer Adams had advised of the armed robbery, pursued the subject and discovered a shotgun (which fit the description given by Officer Adams of the one used by the armed robber) in the backyard of a house searched within one-half block from the store. Also, Phillip Alleman testified that while driving by the K & B store on the night of the robbery he saw the defendant running down a street near the store.
The shotgun was identified by its owner, Kevin Beck, who informed Officer Adams that the defendant had borrowed the shotgun from him. Officer Adams identified the defendant from a photographic line-up, and with this information, he obtained an arrest warrant for the defendant who was later found and arrested in Waco, Texas.
Each of the store employees, Officer Adams, and Alleman gave a detailed description of the defendant on the night of the armed robbery and each made a positive in-court identification of the defendant as the armed robber from their memory of his appearance as recalled from that night. Some witnesses testified to having seen the defendant in the neighborhood before the robbery occurred.
*384 The defendant argues in his third assignment of error that the arrest warrant issued in the case was fundamentally defective and therefore illegal and improper.
The defendant did not move to suppress the arrest warrant in a pre-trial motion or at trial. Therefore, this assignment is not properly before us. La.C.Cr.P. art. 521; 703(F). State v. Sweeney, 443 So.2d 522 (La.1983).
In any event, we find that the arrest warrant was properly issued pursuant to Officer Adams' sworn affidavit since his affidavit states sufficient facts on which a neutral magistrate could base a reasonable probable cause to believe an offense was committed and that the person against whom the complaint was made committed it. La.C.Cr.P. art. 202. Furthermore, the question of probable cause for the arrest is now moot since the defendant has been tried and convicted by a jury. State v. Green, 443 So.2d 531 (La.1983); State v. Luckett, 327 So.2d 365 (La.1976); State v. Monk, 315 So.2d 727 (La.1975).
In assignments of error four, five and twelve, defendant urges that the photographic line-up used to identify him as the perpetrator of the crime was unduly suggestive and that this out-of-court identification tainted the in-court identification of the defendant by Officer Adams. Officer Murphy showed Officer Adams a photo line-up, consisting of xerox copies of photographs, and Adams identified the defendant as the perpetrator of the armed robbery.
Defendant's pre-trial motion to suppress Officer Adams' identification of the defendant was denied. The State did not offer the photographic line-up as evidence at the trial; however, the defendant offered same into evidence for the purpose of establishing his claim that the line-up was unduly suggestive.
The defendant claims that the photographic line-up was unduly suggestive because the photocopy of the photograph of the defendant (which was a black and white photograph and the other eight photographs used were color photographs) had a lighter background than the other photocopies used in the line-up.
A similar problem was presented in State v. Robinson, 386 So.2d 1374, 1377 (La. 1980), where the court stated:
"A line-up is unduly suggestive if the identification procedure displays the defendant so that the witness' attention is focused on the defendant. For example, distinguishing marks on the photographs may single out defendant. State v. Guillot, 353 So.2d 1005 (La.1977). A line-up can also be suggestive if a sufficient resemblance of physical characteristics and features of persons in the line-up does not exist to reasonably test the identification. State v. Guillot, supra; State v. Gray, 351 So.2d 448 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). Even if an identification procedure is suggestive, it will not result in reversal of a conviction if it is demonstrated that the identification was reliable. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); State v. Guillot, supra."
In order to suppress an identification, the defendant must prove that the identification itself was suggestive and that there is a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Chaney, 423 So.2d 1092 (La.1982); Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).
In this case, the photographs used to assemble the photographic line-up have sufficient resemblance of physical characteristics and features of the persons depicted to reasonably test the reliability of the identification.
In addition, Officer Adams testified that he viewed the defendant within ten feet for 2-3 seconds as he observed the defendant in the lighted front portion of the K & B store during the robbery, he could have identified the defendant without seeing the photographic line-up, and that there was *385 never any suggestion that he pick out the defendant's photo.
We therefore do not believe that the somewhat lighter background of the photocopy of the defendant's photograph caused Officer Adams to focus his attention on that photograph so as to make the procedure impermissibly suggestive. We further believe that Officer Adams' opportunity to see the defendant and his certainty that the defendant was the armed robber in question made his in-court identification of the defendant reliable. The same can be said of the identification by the other witnesses. We therefore find that, considering the number of witnesses who positively identified the defendant as the perpetrator of the crime, the photo line-up did not lead to misidentification of the defendant.
In assignments six and seven, defendant argues that the denial of his motion for a mistrial was reversible error.
Defendant based his mistrial motion on alleged prejudicial juror misconduct which occurred when one of the jurors revealed that she knew one of the State's witnesses and could not be an impartial juror after hearing some of the testimony at the trial. An evidentiary hearing was conducted out of the presence of the jury, and the juror informed the trial judge that she was acquainted with some of the prosecution witnesses. The juror explained that she realized that she knew some of the witnesses because she got her prescriptions filled at the K & B store which was involved in the robbery. She testified that she purposefully refrained from mingling with the other jurors and had walked immediately to the bailiff to inform him of the problem. The bailiff corroborated her testimony. The other jurors were examined and denied hearing anything that the juror had said to the bailiff.
The trial judge questioned the juror as to her ability to still be fair and impartial to both the State and the defense and the juror responded negatively. Upon concluding the juror was not capable of impartiality the trial judge denied the motion for mistrial and replaced the questioned juror with the alternate juror who had been selected and sworn along with the other jurors prior to commencement of the trial.
La.C.Cr.P. art. 789 grants to the trial judge authority to use an alternate juror to replace a juror who has been disqualified prior to the time the jury retires to consider its verdict. State v. Marshall, 410 So.2d 1116 (La.1982). A trial judge may disqualify a juror upon a finding of blatant prejudices and partiality. State v. Marshall, supra; State v. Fuller, 454 So.2d 119 (La.1984). See also State v. Williams, 460 So.2d 2 (4th Cir. 1984).
Here the juror specifically stated she could not be impartial. Therefore, we cannot say the trial judge abused his discretion in replacing the juror who was disqualified prior to jury deliberations and hence find no error as a result of the trial judge's denial of the motion for a mistrial.
In assignments nine and ten, the defendant argues that the trial court erred when it made comments about and allowed the jury to have knowledge of a bomb threat made during the trial.
During defendant's trial there was a bomb threat. The trial judge recessed the case and sent the jury to lunch. In doing so, the trial court stated to the jury: "It's a bomb scare and it takes an hour. We'll take the noon recess and come back at twelve-thirty." Defendant urges this was an improper and prejudicial judicial comment. Since no objection was made to the comment at the trial, this alleged error is not properly before us. La.C.Cr.P. art. 841. Nevertheless, to us the comment appears reasonable and mandated under the circumstances for the safety of the jurors. There is also no showing that the comments made prejudiced the jury in any manner. Accordingly, these assignments of error are without merit.
The arrest warrant in this case was issued in part on information given to Officer Adams by Kevin Beck, i.e., the defendant had borrowed from Beck the weapon alleged to have been used in the crime. *386 In assignment of error No. 11, the defendant argues denial of his right to confront his accuser and of compulsory process because the State failed to call Kevin Beck to testify or to make him available to the defendant for cross-examination. The defendant did not request a subpoena of this witness. The defendant's right to compulsory process is the right to request subpoenas for witnesses and the right to have the requested subpoenas issued by the court. La.C.Cr.P. art. 731. However, a defendant cannot claim that he was denied the right to compulsory process for obtaining witnesses on his behalf where he does not seek to subpoena the witnesses. State v. Latin, 412 So.2d 1357 (La.1982); State v. Green, 448 So.2d 782 (2nd Cir.1984). The trial court did nothing to deny the defendant his right to confront Beck by requesting the issuance of a subpoena to Beck. Hence, this assignment lacks merit.
In assignment No. thirteen, defendant contends the trial court erred when it allowed witnesses to testify that the defendant was the perpetrator of the armed robbery. The defendant argues that none of the witnesses testified that they saw any tattoos on the defendant when in fact the defendant displayed tattoos on his body for the jury at the time of the trial.
The defendant was observed by various witnesses who had excellent opportunities to see the defendant. An accurate description of the defendant was given to officers immediately after the crime. From these circumstances, identification of the defendant as the perpetrator of the crime was reliable, in our opinion, regardless of whether any of the witnesses described the alleged tattoos on the defendant. See State v. Prudholm, supra.
In assignment No. fourteen, the defendant argues that the trial court erred when it allowed prejudicial statements by the district attorney to be made during his opening statement, closing statement, voir dire, and the trial.
During voir dire, the prosecution told the prospective jurors that he had read a list of State witnesses to them at the request of the trial judge. He further explained that he might not call all the witnesses listed, if it appeared unnecessary. The defense objection, that the prosecutor was improperly arguing evidence during voir dire, was overruled.
The trial judge has discretion over the scope of voir dire examinations (including whether particular questions are essential to full voir dire) and his rulings will not be disturbed on appeal in the absence of an abuse of discretion. LSA Const. Art. 1, Section 17; C.Cr.P. art. 786; State v. Williams, 457 So.2d 610 (La.1984); State v. James, 431 So.2d 399 (La.1983).
The reading of the witness list at voir dire is ordinarily done out of an abundance of caution in order to give the court and the parties an opportunity to ascertain whether a juror may know one of the witnesses and, therefore, avoid the possibility of an impartial juror tainting the defendant's right to have the evidence viewed by an impartial trier of fact. This argument is without merit as we find no prejudice to the defendant as a result of the statements made.
Defendant also claims error in the prosecutor's opening statements when the prosecutor stated to the jury that "I'm going to show you physical evidence, and again, the gun, photographs taken on the scene and photographs taken at the location where the gun was found." Defendant claims the jury was misled into believing the witnesses identified the defendant from photographs on the night of the crime.
These remarks are not, in our opinion, designed to mislead the jury, but rather, the remarks were a clear statement of evidence the State intended to introduce at the trial to prove the defendant's guilt, and thus, properly and necessarily included within the scope of opening argument. La. C.Cr.P. art. 766, 769. Additionally, this statement was unobjected to at trial and need not be considered on appellate review. La.C.Cr.P. art. 841.
*387 Defendant further objects to the prosecutor questioning the witness, Sherri Allen, with regard to photographic identification from two photographs of the defendant shown to her by Officer Adams on the night of the crime, claiming that the jury would be misled into thinking these photographs were a product of investigation of the crime, rather than mugshots the officer already had.
Defendant makes no showing of prejudice. In any event, this line of prosecutorial questioning was unobjected to at trial and is not preserved for appellate review. La.C.Cr.P. art. 841. This argument is without merit.
Defendant also complains that, during his examination of the defendant, the prosecutor noted defendant's failure to call certain witnesses in his defense. Defendant contends this was an improper shifting of the burden to him to prove his innocence. Defendant also claims that prosecutorial examination of defense witness, Debra Brown, concerning alibi information, similarly shifted the burden to defendant to prove his innocence. We do not agree.
As we view it, the prosecutor's examination of the defendant and of Debra Brown were proper and directed to the defendant's lack of evidence to prove his alibi. Hence, we see no error. See State v. Boutte, 447 So.2d 1229 (5th Cir.1984).
Defendant also claims the prosecutor made prejudicial comments to the jury in his closing argument which requires reversal.
The record was reviewed and we find no prejudicial comments or comments not properly within the scope of La.C.Cr.P. art. 774. In any event, no objection was made at trial to any such comments and is therefore not preserved for appellate review. La.C.Cr.P. art. 841.
In assignments Nos. fifteen and sixteen defendant claims the trial court erred by giving improper instructions regarding criminal intent to the jury.
The complained of charge to the jury was as follows:
"Specific criminal intent is that state of mind which exists when the circumstances indicate that the defendant actively desired the prescribed criminal consequences to follow his act or failure to act.
Whether criminal intent is present must be determined in light of ordinary experience. Intent is a question of fact which may be inferred from the circumstances."
Defense counsel made no objection to his jury instruction, accordingly, the issue has not been preserved for appellate review. La.C.Cr.P. art. 841; State ex rel Ross v. Blackburn, 403 So.2d 719 (La.1981). Moreover, the instruction is entirely correct. R.S. 15:445.
We do not agree with defendant's assignment of error No. 17, that the trial record is contrary to the known testimony.
In assignment of error No. eighteen, the defendant urges as error the trial court's failure to conduct individual voir dire.
Defense counsel did not request individual voir dire. This motion is therefore without merit. La.C.Cr.P. art. 841. The conduct of voir dire examination rests in the sound discretion of the trial court and absent a showing of special circumstances, the trial court does not abuse its discretion by failing to conduct individual voir dire. State v. James, 431 So.2d 399 (La.1983); C.Cr.P. art. 776 and 786. Under the circumstances presented here, the conduct of the voir dire examination was within the discretion of the trial court.
In assignment of error No. nineteen defendant argues that his trial counsel's ineffectiveness prevented him from obtaining a fair trial. He claims specifically that trial counsel rendered ineffective assistance when he failed to investigate the crime; failed to develop an alibi defense, even though defendant allegedly supplied him with names of witnesses who would testify; failed to interview any of the eyewitnesses; failed to object to the judge's explanation *388 to the jury that there would be a recess because of a bomb threat; failed to object fully to identification testimony; and failed to object to jury instructions explaining criminal intent.
Effectiveness of counsel is not determined by whether the defense absolves the defendant of guilt on the charge, but rather, is determined by the performance of counsel in presenting the defense and protecting defendant's rights. In evaluating the performance of counsel, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances." In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), 104 S.Ct. at page 2064, the court said:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Based on our review of the record, we cannot say that counsel was ineffective or that the defendant did not receive a fair trial. Further, allegations of ineffective counsel based on events occurring outside the record are best raised by application for post conviction relief where the quality of assistance can be more fully explored in a full evidentiary hearing rather than by an assignment of error presented on appeal.
The defendant urges this court to review the entire record for any errors patent on the record. Our review of the record for errors patent reveals that there are none in favor of the defendant. Thus, we affirm the defendant's conviction of armed robbery.
Armed robbery is punishable by imprisonment "at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." R.S. 14:64. Here the defendant was sentenced to serve fifty (50) years at hard labor, the first ten years to be without benefit of parole, probation or suspension of sentence. When, by law, a sentence must be imposed "without benefit of probation, parole or suspension of sentence," the sentence is "illegally lenient" if it fails to specify these restrictions. State v. Robertson, 459 So.2d 581 (5th Cir.1984).
The State did not object to the sentence when it was imposed and did not apply to the trial court for correction of sentence. In its brief in reply to the defendant's appeal and by formal motion filed after the appellate arguments, the state asked that we correct the illegally lenient sentence.
In State v. Jackson, 452 So.2d 682 (La. 1984), the defendant was convicted of simple burglary of a pharmacy and sentenced to ten (10) years imprisonment, but the trial judge did not mention the denial of parole eligibility as required by the burglary statute. On appeal, the defendant's sentence was amended by the appellate court to provide that the defendant was not eligible for parole, even though the prosecution had not raised the issue in the trial court or otherwise sought review of the sentence on appeal. The supreme court accepted writs on the issue and ruled as follows:
La.C.Cr.P. Art. 882 provides that an illegal sentence may be corrected by the trial court at any time. Additionally, an appellate court may take notice of the illegality of a sentence as an error patent on the face of the record. La.C.Cr.P. Art. 920. However, there is a fundamental precept in appellate procedure that when a party exercises his right to appeal, *389 the appellate court should not, by taking cognizance of an issue not properly raised by either the appellant or the appellee, render a judgment on appeal which is less favorable to the appellant than the judgment from which the appeal was taken. This precept is particularly applicable in the case of appeals by defendants in criminal cases. An unsought modification by an appellate court, if the result is a harsher sentence, either is or appears to be retaliatory in nature. Such modifications thus may produce a "chilling effect" on the exercise of the right to appeal. [footnote omitted]
.....
... When a defendant alone appeals and the record contains a patent error unfavorable to the defendant, an appellate court should recognize and correct the error. However, when a defendant alone appeals and the record contains a patent error favorable to the defendant, the appellate court should ignore the error, unless the prosecution, having properly raised the issue in the trial court, has sought appellate review. Otherwise, as noted earlier, a defendant's exercise of his right to appeal would result in his coming out of the appeal with a harsher sentence than he had going into the appeal. [footnote omitted]
Therefore, if a trial judge imposes a sentence without mentioning denial of parole eligibility required by a statute, it is inappropriate for an appellate court to correct the sentence when the defendant alone seeks appellate review. [footnote omitted] Only the prosecution can seek correction of the error, and this should be done by applying first to the trial court, subject to subsequent appellate review. See State v. Speed, 335 So.2d 28 (La.1976); State v. Jimmerson, 432 So.2d 1093 (La.App. 3rd Cir.1983).
Subsequent to the Jackson decision, Article 882 was amended to read as follows:
"An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.

A sentence may be reviewed as to its legality on the application of the defendant or of the state:
(1) In an appealable case by appeal; or
(2) In an unappealable case by writs of certiorari and prohibition." [emphasis added]
In State v. Robertson, supra, the defendant was convicted of attempted armed robbery and given an illegally lenient sentence. The prosecuting attorney did not object to the sentence when it was imposed and did not, in response to the appeal, call attention to the illegal sentence by way of pleading or brief. The State did not formally ask the appellate court to correct it, but did, in oral argument, suggest that the appellate court, under the authority of the amended version of Article 882, should make the correction. In rejecting the State's contention, this court said:
We are mindful of State v. Jackson, 452 So.2d 682 (La.1984), in which Supreme Court of Louisiana stated that `... it is inappropriate for an appellate court to correct the sentence when the defendant alone seeks appellate review.' Such action by an appellate court, the Supreme Court said, would have a `chilling effect' on the exercise of the right to appeal.
Nonetheless, Art. 882 does give appellate courts the authority to correct an illegally lenient sentence `... on the application of the defendant or of the state.' (Underlining supplied.) The term `application' is not further described, but in the instant case we are not prepared to say that the prosecution has made sufficient `application.'
Robertson, supra, is distinguishable from this case on the following basis: (1) the defendant here makes application to this Court to review the entire record for any errors patent and to set aside the sentence because it was excessive, and (2) the State, in its brief, requests this Court to correct the illegal sentence. These factors cause us to conclude that the sentence should be set aside and the case remanded for resentencing.
*390 The trial judge noted as mitigating circumstances that the defendant was born with cerebral palsy; his arm does not function properly; he grew up in a bad environment and now has a minor child. The sentence imposed shows his obvious intent to consider the mitigating circumstances in setting the sentence. In doing so, however, he erred because he imposed a sentence which is illegal.
Accordingly, the conviction of the defendant is affirmed, but his sentence is set aside and the case remanded to the trial court for resentencing.
CONVICTION AFFIRMED, SENTENCE SET ASIDE, CASE REMANDED FOR RESENTENCING.