457 So.2d 902 (1984)
STATE of Louisiana
v.
Bill WILLIAMS, Jr. and Mary Ann Williams.
No. CR83-901.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Writ Denied December 7, 1984.
*904 Katherine S. Williamson, Small, Small, Williamson & Brocato, Alexandria, for defendant-appellant.
Mark Kramar, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
Before GUIDRY, LABORDE and YELVERTON, JJ.
GUIDRY, Judge.
On March 21, 1983, the defendants, Bill Williams, Jr. and Mary Ann Williams, were charged by bills of information with:
1. Knowing and intentional possession of a controlled dangerous substance, to-wit: marijuana, in violation of La. R.S. 40:966(C);
2. Knowing and intentional possession of a controlled dangerous substance, (cocaine) with the intent to distribute, in violation of La.R.S. 40:967 (A);
3. Knowing and intentional possession of a controlled dangerous substance, (phenmetrazine) with the intent to distribute, a violation of La.R.S. 40:967 (A);
4. Knowing and intentional possession of a controlled dangerous substance, (pentazocine) with the intent to distribute, a violation of La.R.S. 40:967 (A).
The defendants filed a pretrial motion to suppress evidence and statements made by the defendants. The motion was argued and denied on May 3, 1983. Following a trial by jury, the defendants were found guilty on all charges.
The court ordered a pre-sentence investigation. Following receipt of the pre-sentence investigation report, the trial judge sentenced the defendants as follows.
On the convictions of possession of marijuana, both defendants were sentenced to pay a fine of $500.00 and to serve six months in the Vernon Parish Jail. Provided the fines were paid, the jail sentences were to run concurrent with the other sentences imposed. On the conviction of possession of cocaine with intent to distribute, Bill Williams, Jr. was sentenced to pay a $5,000.00 fine and to serve twenty years at hard labor. For her conviction of the same offense, Mary Ann Williams was sentenced to pay a fine of $5,000.00 and to serve a prison term of ten years. On the conviction *905 of possession of phenmetrazine with intent to distribute, Bill Williams, Jr. was sentenced to a prison term of five years, to run consecutively to the other sentences imposed. For her conviction of the same offense, Mary Ann Williams received a prison sentence of five years, to run consecutively to the other sentences imposed. Finally, on the conviction of possession of pentazocine with intent to distribute, Bill Williams, Jr. received a prison sentence of seven years, without benefit of parole, probation, or suspension of sentence, to run concurrently to the other sentences imposed. For her conviction of the same offense, Mary Ann Williams received a prison sentence of five years, without benefit of parole, probation, or suspension of sentence, to be served concurrently with the other sentences imposed.
Defendants appeal their convictions and sentences urging ten assignments of error. However, as only four assignments have been briefed, the remaining six are considered abandoned and will therefore not be addressed.[1]

FACTS
On December 16, 1982, authorities conducted a search of Mary Ann's Supper Club located at 114 Havana Street in Leesville, Louisiana. The establishment was owned and operated by the defendants, Bill and Mary Williams. The search was conducted pursuant to a search warrant issued largely upon information supplied by a confidential informant and observations by police officers who had kept the Williams and their business establishment under observation for about two months.
A variety of controlled dangerous substances, as well as several items of alleged "drug paraphernalia", along with large amounts of money were confiscated, mostly from a locked "bedroom" on the premises described above and from two purses allegedly belonging to defendant, Mary Ann Williams.
Both defendants made certain inculpatory statements at the time of the search. Following the search of the supper club, both defendants were arrested and each charged with the various narcotics offenses above mentioned. Both were convicted on all counts and sentenced as set forth previously. Both appeal their convictions and sentences, urging the following assignments of error.

ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendants contend that the trial court erred in denying their motion to suppress the evidence seized from the supper club. They assert that the affidavit in support of the search warrant failed to establish probable cause.
It is well established that a search warrant may issue only upon an affidavit establishing probable cause to the satisfaction of a neutral magistrate. La. Const. Art. I, Sec. 5; La.C.Cr.P. Art. 162; State v. Klar, 400 So.2d 610 (La.1981); State v. Duncan, 420 So.2d 1105 (La.1982). The determination of probable cause is made on an analysis of the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Lingle, 436 So.2d 456 (La.1983). In Gates, the United States Supreme Court abandoned the Aguilar[2] and Spinelli[3] "two-pronged test", substituting in its place a "totality of the circumstances" analysis. Gates, 103 S.Ct. at 2332. The Louisiana Supreme Court has followed the Gates rationale. State v. Lingle, supra. The test, articulated by the United States Supreme Court in Gates is as follows:
"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis *906 of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 103 S.Ct. at 2332.
The defendants admit that the affidavit supports the credibility of the confidential informant but argue that there is insufficient information in the affidavit to establish the reliability of the informant's information. The defendants further assert that as there is no indication in the affidavit as to the amount of drugs observed by the informant, there was no reason to believe that the quantity he observed would remain on the premises at the time of the search.
The confidential informant gave information on December 16, 1982, based on observations made as late as December 15, 1982. While it is true that the affidavit does not specify the amount of drugs on the premises, the informant's information, taken as a whole, tends to show that there was an ongoing distribution of drugs from this establishment and that he had viewed an amount of drugs and enough drug paraphernalia to indicate same. The confidential informant had personally observed marijuana and cocaine at the supper club. He knew that most of the controlled dangerous substances were stored in a locked room behind the bar. The informant even knew that the defendant had some of the cocaine hidden in a Bible in that locked bedroom. The informant also told authorities that he personally knew the defendant to be actively engaged in the sale of controlled dangerous substances.
The defendants admit that the confidential informant was shown to be reliable but assert that the affidavit fails to establish the reliability of the information contained therein. In Illinois v. Gates, supra, the United States Supreme Court made it clear that:
"... an informant's `veracity', `reliability', and `basis of knowledge', are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every caseRather, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is `probable cause' to believe that contraband or evidence is located in a particular place." Gates, 103 S.Ct. at pgs. 2327-2328.
It appears from the informant's statements that the issuing magistrate had sufficient information from which to make a "commonsense" and practical minded conclusion that there existed probable cause to believe that controlled dangerous substances would be found on the premises described. As the court in Gates pointed out, "in dealing with probable cause, we deal with probabilities." Gates, 103 S.Ct. at 2328.
"These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Gates, 103 S.Ct. at 2328.
The defendants also argue that because the premises was a restaurant, and there were no allegations in the affidavit which would connect the contraband to the defendants, there was no reason to assume that the contraband was under their control. The affidavit clearly belies this assertion. The affidavit sets out that the drugs were observed in a locked room, generally under the control of the defendant owners. The confidential informant told officers he had personally observed Mr. Williams sell marijuana and cocaine from this establishment at 114 Havana Street. Moreover, the officer had received information from several other informants that Mr. Williams was dealing in drugs. Thus, the affidavit is replete with information connecting Mr. and Mrs. Williams to the contraband on the premises.
We conclude that the affidavit clearly established probable cause that controlled dangerous substances and drug paraphernalia, indicative of an ongoing distribution of drugs, would be found at the *907 named premises. For the reasons stated above, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment, the defendants argue that the trial court erred in admitting into evidence, over defense objection, a statement made by defendant to the arresting officer. The defendant asserts that State Exhibit Eleven includes an inculpatory statement made by defendant which should have been furnished to the defense during pretrial discovery. The defendant maintains that the failure to notify him that said inculpatory statement would be offered into evidence prejudiced his defense.
The statement alleged to be inculpatory is that in which Bill Williams gave the arresting officer his residence addresses as 531 Charleyvoy, Houston, Texas, and 114 Havana Street, Leesville, Louisiana. The Havana Street address is the address of the supper club owned by defendants. Defendants argue that because the State was required to prove knowing possession of controlled dangerous substances, the issue of whether defendants actually resided at the supper club was of extreme importance. The Louisiana Code of Criminal Procedure, Article 716(C) provides:
"Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
Clearly, the discovery rules in Article 716 and following are "intended to eliminate unwarranted prejudice which could arise from surprise testimony". State v. Toomer, 395 So.2d 1320 (La.1981) and State v. White, 430 So.2d 171 (La.App. 2d Cir.1983), writ denied, 433 So.2d 1055 (La.1983).
First, it does not appear that the State intended to offer this statement into evidence nor does it appear that, prior to the defense's argument, this statement was even thought to be inculpatory. The arresting officer merely asked routine information of the defendant. The defendant's response was not seen as any sort of inculpatory statement. Nowhere in the course of the proceedings does it appear that the State had any intention of using this remark to in any way prove its case against the defendants. Moreover, it is questionable as to whether this was "surprise testimony" which resulted in prejudice toward the defendant. The State did not introduce this testimony to prove its case but only introduced the remark to rebut defense's argument that defendants did not reside at the supper club as a means of proving that the controlled dangerous substances were not under their control or knowingly possessed by defendants. It was hardly a "surprise" to find that the defendants had given this address as one of their residence addresses on the arrest report. Until this point in the proceedings, it was not logical for the State to view this "remark" as inculpatory.
The State's response and amended response to defendants' discovery motion appears to indicate that the State had disclosed every bit of inculpatory remarks made by defendants which the State intended to introduce at trial. No notice was given regarding this statement because apparently the State did not view this routine information as inculpatory and had no intention to introduce the remark to prove anything.
As the prosecutor pointed out at trial:
"... the offering is made in response to defense counsel's questioning along those lines as to whether or not Mr. Williams ever told him that he resided in Houston, Texas or what address was given. Defense counsel's opened the door for this offering and it was not anticipated prior to trial."
The trial court overruled the objection stating that:
"The only thing that it shows is a couple of addresses which is commensurate with *908 the cross-examination, as a matter of fact, the very leading question."
The admissibility of the evidence in question is left largely to the discretion of the trial judge. State v. White, supra. There appears to be no abuse of that discretion herein as the address did not logically appear to be an inculpatory remark nor does it appear that the State intended to introduce the remark to prove its case.
For the reasons as stated, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 9
Through this assignment, defendants argue that there was not sufficient evidence introduced to sustain the convictions returned by the jury on the four offenses with which defendants were charged.
The State offered both direct and circumstantial evidence to prove the charges brought against defendants. Where there is both direct and circumstantial evidence, the test of sufficiency of the evidence is clear.
"The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
See also State v. Washington, 421 So.2d 887 (La.1982); State v. Moore, 432 So.2d 209 (La.1983).
The defendants were charged with knowingly and intentionally possessing marijuana, a violation of La.R.S. 40:966 (C & D); and knowingly and intentionally possessing, with intent to distribute, cocaine, phenmetrazine, and pentazocine, each violations of La.R.S. 40:967(A). Thus, the State was required to prove that defendant's knowingly and intentionally possessed a substance as alleged in the bills of information, and, that at the time of the possession, defendants had a specific intent to distribute such substances. The evidence introduced at trial appears to have been sufficient enough for the jury to conclude that defendants were guilty as charged. The State proved through expert testimony that the substances seized from the supper club were what they were alleged to be in the bills of information. The State also introduced items referred to as drug paraphernalia such as a set of scales and a larger number of small plastic bags. The State introduced testimony to show that the scales and bags, although they have other uses, were commonly used in illegal drug operations. Defendants had told officers they used these in their business but could offer no explanation of how these items were used by defendants or their employees. The State also introduced into evidence large sums of money found in the locked bedroom where most of the confiscated drugs were found. In addition, the State introduced into evidence ledgers or records of what strongly appears to have been records of drug sales. Defendant, Mary Ann Williams, even admitted to the charge of possessing marijuana.
The defendants assert that they were not residing at the supper club and that anyone had access to the bedroom where the drugs and money were found. But the evidence showed that there was a great deal of clothing belonging to the defendants in that bedroom. In addition, the room was kept padlocked, although defense witnesses testified that the key was kept in the cash register. The cocaine seized by the officers was found in the hem of a curtain in the bedroom. The jury could reasonably infer from the evidence set forth above that the drugs were under defendants' control, that defendants knowingly possessed the controlled dangerous substances as listed in the bills of information, and that the defendants were engaged in the ongoing distribution of a variety of controlled dangerous substances.
The defendants also argue that the amount of drugs recovered were not consistent with distribution but with personal consumption only. Alternatively, the defendants argue that the State failed to *909 prove the requisite intent to distribute. Though an expert witness did testify that the amount of most of the drugs recovered was small, he did testify that the amount of phenmetrazine recovered was indicative of distribution. Be that as it may, the jury could consider the amounts of money found in the bedroom; the large sums listed in the ledgers indicative of drug sales rather than the fictitious sales named therein; the drug paraphernalia confiscated; along with the controlled dangerous substances; and conclude that the necessary intent to distribute was proven beyond a reasonable doubt.
"Intent to distribute may be inferred from the circumstances. LSA-R.S. 15:445." State v. Greenway, 422 So.2d 1146 at 1148 (La.1982).
The defendant is correct in arguing that mere possession is not evidence of intent to distribute, unless of course, the amount is so large that no other inference would be reasonable. Greenway, supra. However, there was enough other evidence in this case upon which the jury could base its verdict of guilty. Greenway, and the other cases cited by defendant in brief,
"... merely stand for the proposition that having possession of a small quantity of a dangerous controlled substance, standing alone, will not support an inference that the substance was intended for distribution." State v. Ramoin, 410 So.2d 1010 (La.1982).
"Intent to distribute illegal drugs may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute." State v. Elzie, 343 So.2d 712 (La.1977). Ramoin, on rehearing, at 1013.
Thus, it appears that there was enough evidence introduced, in spite of the small quantities of controlled dangerous substances recovered, for the jury to reasonably conclude that the defendants were engaged in the distribution of the controlled dangerous substances as listed in the bills of information.
For the reasons stated above, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 10
Finally, the defendants contend that the sentences imposed are constitutionally excessive, in violation of Art. 1, Section 20 of the Louisiana Constitution.
The imposition of a sentence, even one within statutory limits, may violate the Constitutional protection against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Campbell, 404 So.2d 1205 (La.1981). A sentence is excessive if it is so grossly disproportionate to the severity of the crime that it shocks the court's sense of justice, or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). However, the trial judge is afforded wide discretion in the imposition of sentences within statutory limits, and the sentence imposed will not be set aside absent a manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La. 1982).
The defendant, Bill Williams, Jr., was sentenced to pay a fine of $500.00 and serve a jail term of six months on the conviction of possession of marijuana. Although this is the maximum sentence authorized by La.R.S. 40:966 (D), the trial judge ordered that, upon payment of the fine, the prison term was to be served concurrently with the other sentences imposed. On the conviction of possession of cocaine with intent to distribute, he was sentenced to pay a $5,000.00 fine and serve a prison term of twenty years. The statutory penalty for this offense is a fine of up to $15,000.00 and a prison term not less than five years nor greater than thirty years. La.R.S. 40:967 (B)(1). On the conviction of possession of phenmetrazine with intent to distribute, Williams was sentenced to five years, to be served consecutively to the other sentences imposed. The penalty authorized for this offense is a fine of up to $15,000.00 and a prison term not to exceed ten years. La.R.S. 40:967 (B)(3). *910 Finally, on the conviction of possession of pentazocine with intent to distribute, Williams received a sentence of seven years without parole, probation, or suspension of sentence. The penalty for this offense is a fine of up to $15,000.00 and a prison term not less than four nor greater than ten years. The statute further requires that the prison term be served without benefit of probation, parole, or suspension of sentence. La.R.S. 40:967 (B)(2).
We find none of the sentences imposed on Bill Williams, Jr. to be excessive. The trial court, in imposing the sentences, took note of Williams' long history of criminal activity. Williams' criminal record, made part of the record herein, shows arrests for, among others, theft, aggravated assault, gambling, unlawful flight to avoid prosecution, forgery, illegal carrying of weapons, possession of heroin, and distribution of phenmetrazine. The trial judge also recognized that prior attempts at rehabilitation through probationary treatment have failed.
In light of Williams' criminal history, and his failure to reform during over thirty years of criminal activity, we find no abuse of discretion in the sentences imposed by the trial court. State v. Lanclos, supra.
We next consider the sentences imposed upon Mary Ann Williams. She, like her co-defendant, received a sentence of six months in the parish jail and a $500.00 fine on the conviction of possession of marijuana. As was the case with the sentence imposed on her husband, the trial court ordered that, upon payment of the fine, the jail sentence would run concurrently with the other sentences imposed. On the conviction of possession of cocaine with intent to distribute, she was sentenced to pay a $5,000.00 fine and to serve a prison sentence of ten years. Both penalties represent one-third of the maximum allowed by statute. La.R.S. 40:967 (B)(1). On the conviction of possession of phenmetrazine with intent to distribute, she received a prison sentence of five years, or one-half of the maximum prison sentence authorized by La.R.S. 40:967 (B)(3). Finally, on the conviction of possession of pentazocine with intent to distribute, she received a five year prison sentence without benefit of parole, probation or suspension of sentence to run concurrently with the other sentences imposed. This sentence represents one-half of the maximum prison sentence authorized by La.R.S. 40:967 (B)(2), and one year greater than the minimum prison sentence authorized by the statute.
While Mary Ann Williams' criminal record is not as long or as varied as that of her husband, the record does show that she was convicted in the U.S. District Court, Western District of Louisiana, for forcible robbery on a military reservation. She was given a five year suspended prison sentence and five years of supervised probation.
We find none of the sentences imposed upon Mary Ann Williams to be excessive. The prison sentences she received for the three felony convictions all fall within the low to middle range of sentences authorized by statute. The multiple nature of the offenses indicates that the defendant was involved in an ongoing drug distribution business involving a variety of illicit drugs. In light of the seriousness of the offenses, we find no abuse of the trial court's discretion in the sentences imposed upon Mary Ann Williams.
For the reasons assigned, the convictions and sentences imposed upon the defendants are affirmed.
AFFIRMED.
NOTES
[1] Assignments of error not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Crawford, 441 So.2d 813 (La.App. 3rd Cir.1983).
[2] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[3] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).