474 So.2d 529 (1985)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jackie Denise COLLIER, Defendant-Appellant.
No. CR84-847.
Court of Appeal of Louisiana, Third Circuit.
August 12, 1985.
*530 William D. Dyess, Many, for defendantappellant.
James L. Davis, Dist. Atty., Many, for plaintiff-appellee.
Before GUIDRY, FORET and KING, Judges.
KING, Judge.
The sole issue presented by this appeal is whether or not the defendant was properly convicted of second degree murder.
The defendant, Jackie Denise Collier, (hereinafter Collier) was indicted for second degree murder in violation of La.R.S. 14:30.1. After trial by jury, she was found guilty of second degree murder and was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant timely appeals relying on three assignments of error for reversal of her conviction. We affirm.

*531 FACTS
On November 16, 1983, Collier and Jerry Loyd got into an argument at the Community Grocery and Package Store in Zwolle, Louisiana while Loyd was playing pool and Collier was drinking. He called her a bitch and a whore and told her to get out of his face. Collier threw a drink at him and Loyd knocked her to the floor and proceeded to hit her with a pool cue. Either Collier or Collier's sister then hit Loyd on the head with a pool ball ending the fight. After the fight, which apparently ended abruptly, Collier went to sit in a booth and Loyd resumed his pool game. A few minutes after the fight ended, a policeman, in response to a call about the fight, entered the pool room. Collier told him nothing was going on. The uniformed policeman then took Loyd outside near his marked patrol car to question him further about the incident. While Loyd and the police officer were talking, Collier came outside the building and ran up and stabbed Loyd. She then shouted "I got that m.f." The officer radioed for an ambulance. Then, realizing that Loyd was too seriously injured to wait for an ambulance, the officer drove Loyd to the hospital in his patrol car. As he was driving away, the officer heard Collier shouting "You die, you m.f., die." Later that night Jerry Loyd died as a result of the stab wound he had received.
Defendant appeals her conviction assigning as error that:
(1) The trial court erred in not granting a mistrial when the State solicited information through a police officer of prior criminal activity of defendant in violation of State v. Prieur;

(2) The trier of fact erred in that the State failed to prove beyond a reasonable doubt that the defendant did not act in sudden passion or heat of blood immediately caused by provocation sufficient to deprive her of her cool reflection; and
(3) The trial judge erred in allowing this case to be tried before a diluted jury venire, caused by excessive excuses and absent jurors, thereby effectively denying defendant a fair trial before a jury comprising a cross section of the community.

ASSIGNMENT OF ERROR NUMBER 1
Collier contends that the trial court committed prejudicial error when it refused to grant a mistrial requested by the defendant where a State's witness, Police Officer David Remedies, while on redirect examination, testified that Collier had a prior criminal record. Collier contends that this testimony created prejudice against her in the minds of the jury and prevented her from obtaining a fair trial.
According to Collier, this testimony did not meet the criteria established by the Louisiana Supreme Court in State v. Prieur, 277 So.2d 126 (La. 1973), and therefore, was not admissible. Also, the defense argues that it did not receive notice of the prosecutor's intent to introduce testimony regarding Collier's prior criminal conduct.
In State v. Fowlkes, 352 So.2d 208 (La. 1977), the Louisiana Supreme Court examined the issue of whether a police officer's reference to a report of a previous crime allegedly involving a defendant warranted a mistrial. In Fowlkes, the court stated:
"A direct or indirect reference to another crime committed or alleged to have been committed by defendant, as to which evidence would not be admissible, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, would require a mistrial on motion of defendant. La.Code Crim.P. art. 770(2). First, a police officer is not a `court official;' therefore, article 770 does not apply. Rather, article 771 of the code of Criminal Procedure would be the applicable article. State v. Hardy, 344 So.2d 1018 (La. 1977); State v. Jones, 332 So.2d 466 (La.1976); State v. Lepkowski, 316 So.2d 727 (La.1975); State v. Clark, 288 So.2d 612 (La.1974).
"La.Code Crim.P. art. 771 provides in pertinent part:
`In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the *532 jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury.
. . . . .
`(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
`In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.'"(Emphasis added.) State v. Fowlkes, 352 So.2d 208, at pages 211, 212 (La.1977).
In State v. Narcisse, 426 So.2d 118 (La. 1983), cert. denied ___ U.S. ___, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983), rehearing denied, ___ U.S. ___, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983), the Louisiana Supreme Court stated:
"Mistrial is a drastic remedy and unless mandatory is committed to the sound discretion of the trial judge. C.Cr.P. 770; State v. Tribbet, 415 So.2d 182 (La.1982). It is only warranted if substantial prejudice results which would deprive defendant of a fair trial. State v. Tribbet, supra; State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is granted discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when prejudicial conduct does not fit within the mandatory mistrial provision of C.Cr.P. 770. State v. Belgrad, 410 So.2d 720, 724 (La.1982). The ruling will not be disturbed on review absent an abuse of discretion. State v. Alexander, 351 So.2d 505 (La.1977); State v. Haynes, 339 So.2d 328 (La.1976)." State v. Narcisse, 426 So.2d 118 at page 133 (La.1983).
Although an investigating officer is a witness, he is closely related to the district attorney in the presentation of the prosecutor's case. Thus, a prejudicial remark by an experienced police officer should be carefully scrutinized with regard to the fairness of the trial and could require the granting of a mistrial, especially if the remark was precipitated or should have been anticipated by the district attorney. State v. Douglas, 389 So.2d 1263 (La. 1980). While unsolicited and unresponsive testimony is not chargeable against the State to provide a grounds for the reversal of a conviction, State v. Michel, 422 So.2d 1115 (La.1982), an impermissible remark deliberately obtained by the design of the prosecutor to prejudice the rights of the defendant, or a State's witness whose answer is a deliberate attempt to expose to the jury defendant's arrests for other crimes, can form the basis of a mistrial. State v. Perry, supra; State v. Tribbet, 415 So.2d 182 (La.1982).
In the present case, Officer Remedies, on redirect examination by the District Attorney, made a reference to Collier's prior criminal activity when he stated in response to questioning:
"Q. Did you say you knew this accused before that night?
"A. Yes, Sir.
"Q. How did you know her?
"A. From previous cases that she had been in our jail.
"Q. Now don't go into that.
MR. DYESS: Your Honor, I want to make an objection, and I want to object for the record."
After the defense objected the judge removed the jury and defendant moved for a mistrial. In the discussion on the record, outside the jury's presence, the District Attorney stated that when he asked the witness how he knew the defendant he had expected Officer Remedies to elaborate on his prior testimony that he had known Collier in school.[1]
*533 Outside of the presence of the jury Officer Remedies told the court that he had had no desire or intent to tell the jury that Collier had prior arrests and that no one had suggested to him that he should attempt to get such evidence before the jury. He stated he thought that the question the District Attorney was asking was about where and how he had met Collier and not about her prior criminal activity. It does not appear that the witness was deliberately attempting to expose to the jury Collier's previous arrests, nor does it appear that the District Attorney was deliberately soliciting such a response. The trial court properly admonished the jury upon its return to the courtroom to disregard the statement of Officer Remedies and properly denied Collier's motion for a mistrial.
Collier's reliance on State v. Prieur, supra, is misplaced. That case applies "When the State intends to offer evidence of other criminal offenses under the exceptions outlined in R.S. 15:445 and 446." State v. Prieur, supra at 130. In the present case, no evidence has been presented indicating that the State had any intention to offer evidence of other criminal activity of Collier. For these reasons we find Collier's motion for a mistrial was properly denied.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Collier contends that the trial court erred in that the State failed to prove beyond a reasonable doubt that she did not act in sudden passion or heat of blood immediately caused by provocation sufficient to deprive her of her cool reflection. Collier argues that the State failed to prove that she had the requisite specific intent to commit second degree murder and that this Court on appeal should modify the verdict of the jury, under the provisions of La.C. Cr.P. art. 821(E), from guilty of second degree murder to guilty of manslaughter.
Article 821 of the Louisiana Criminal Code states the following:
"A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
"B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
"C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
"D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
"E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense."
It should be noted at the outset that the record is void of any evidence that in the trial court Collier filed a motion for post verdict judgment of acquittal. However, Collier by this assignment of error does raise the issue of the sufficiency of the evidence to support her conviction so it will be discussed.
*534 In reviewing a case to determine whether the evidence supports a conviction, the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires this Court to examine the record to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Collier contends that the record contains insufficient evidence to sustain her conviction for second degree murder under the Jackson standard. In this regard, Jackson dictates that this defendant's challenge against the sufficiency of the evidence is judged by determining whether a rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty of second degree murder beyond a reasonable doubt.
La.R.S. 14:30.1 defines second degree murder as follows:
"Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
"Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
Specific intent, which is an essential element of second degree murder, is defined by La.R.S. 14:10(1) as follows:
"(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Even though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Fuller, 414 So.2d 306 (La. 1982); State v. McDermitt, 406 So.2d 195 (La.1981); State v. Boyer, 406 So.2d 143 (La.1981); State v. Beck, 445 So.2d 470 (La.App. 2nd Cir.1984). Further, specific intent is an ultimate legal conclusion to be resolved by the factfinders. State v. Graham, 420 So.2d 1126 (La.1982); State v. LeCompte, 371 So.2d 239 (La.1979).
After reviewing the record in this case, it appears that the verdict of second degree murder is clearly supported by the evidence.
Dianne Williams testified that on November 16, 1983 she observed Collier and Loyd engaged in an argument at the Community Cafe and Grocery. She testified that as the argument progressed, Collier threw a bottle at Loyd but missed him. She testified that Loyd then hit Collier with a pool stick, threw her to the ground and began to hit her. Ms. Williams testified that at that point Ms. Harriet Smith, an employee of the Community Cafe and Grocery, ran from the establishment to obtain the assistance of Officer David Remedies, of the Zwolle Police Department.
Ms. Williams testified that when Officer Remedies entered the cafe he first talked to Collier and then took Loyd outside. She testified that while these two men were standing and talking beside the officer's marked patrol car that Collier exited the cafe and asked Ben Coleman for his "shiv," a knife. Ms. Williams testified that Collier then approached Loyd with the knife in her hand, yelled obscenities and then stabbed Loyd. She testified that while Officer Remedies attempted to call for assistance on his radio, Collier started to approach Loyd again with the knife. She testified that Loyd then attempted to run from Collier but that he fell down. Ms. Williams testified that Collier continued to yell, "I told you I would kill you." She testified that approximately ten minutes elapsed from the time Loyd and Collier were arguing *535 inside the cafe and the time that Collier exited the cafe and stabbed Loyd. It should be noted that Ms. Williams testified that, during this ten minute span, after the fight stopped, that neither party exchanged any other words with each other while inside or outside the cafe.
The testimony of Officer David Remedies corroborated that of Ms. Williams. He testified that Harriett Smith stopped him, while he was on patrol, and stated that Jackie Collier and Jerry Loyd were fighting inside the Sugar Shack. He stated that while he was outside and talking to Loyd by his vehicle, Collier ran up to Loyd and appeared to hit him. Officer Remedies testified that as he pushed Collier away, he noticed that she had a knife in her hand and that Loyd stated, "I have been cut." He testified that Collier continued to curse the victim and stated, "You die, you m.f., die." It should be noted that Officer Remedies testified that immediately prior to the stabbing, Collier and Loyd were not arguing or even near each other.
Mr. Amos Frazier's testimony essentially corroborated that of Ms. Williams in regard to the events which occurred inside the cafe. He also testified that he heard Collier state after the knifing that, "I told him I was going to kill him."
Dr. James Thomas Hill, a physician at the Sabine Medical Center, testified that on the night in question, he treated Loyd from 10:20 P.M. until shortly after midnight but that he was compelled to transfer the victim to L.S.U.-Shreveport because of the severity of his injury. He testified that Loyd was suffering from deep stab wounds in the abdomen.
Dr. Clarence E. Poimboeuf, the coroner of Sabine Parish, testified that Loyd's death was caused by "blood loss, secondary to a stab wound of the abdomen and heart." Dr. Poimboeuf then testified as a defense witness and stated that he examined Collier on January 29, 1984, after her suicide attempt at the Sabine Parish Jail, and determined that she was mentally ill. This information was contained in the doctor's report dated March 5, 1984. The doctor testified that after a brief examination he made a determination that Collier should be sent to Central Louisiana Hospital. Finally, Dr. Poimboeuf testified that he could not express an opinion as to Collier's mental state at the time of the stabbing.
Dr. Paul D. Ware, who specializes in psychiatry and neurology, testified that he examined Collier and determined that she suffers from a mental disorder, known as intermittent explosive disorder, which usually results in a person becoming more easily angered and remaining in that state for a longer period of time than the average individual. He testified that Collier told him that she had been drinking on the night of the stabbing. He also testified that Collier understood the charges filed against her and that she could assist counsel in her defense. Dr. Ware further testified that Collier was clearly aware of the "wrongness" of her actions when she stabbed Loyd.
Upon viewing the evidence in the light most favorable to the prosecution, it appears that a rational trier of fact could have found that all of the essential elements of La.R.S. 14:30.1 were proven and that Collier was guilty of second degree murder. The evidence revealed that Collier and Loyd became involved in an altercation at a local cafe but had terminated their argument and fight by the time Officer Remedies arrived. The evidence showed that Officer Remedies escorted Loyd from the establishment and began to speak with him by his patrol car. The evidence further revealed that Collier then obtained a knife from Ben Coleman, approached Loyd and then stabbed him in the abdomen. The evidence showed that while Officer Remedies was attempting to radio for assistance, Collier, with knife in hand, began to approach Loyd again and Loyd attempted to run away but that he fell down. The evidence further revealed that Collier during this time continued to curse and said such things as, "You die" and "I told him I was going to kill him," after she stabbed Loyd. Finally, the evidence shows that Loyd died later that night and that the cause of death *536 was "blood loss secondary to stab wounds to the abdomen and the heart." Based on these facts, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that Collier had the specific intent to kill or cause great bodily harm to Loyd and that Loyd died as a result of her attack.
In her brief, Collier argues that she acted under sudden passion when she stabbed Loyd and that she acted before she had time to gather her cool reflection. Collier asks this Court on appeal to modify the verdict and render a judgment of conviction on the lesser included offense of manslaughter.
La.R.S. 14:31 defines manslaughter as follows:
"(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
"Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years."
In State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), this Court addressed the issue of whether the State had the affirmative burden of proving that a homicide was not committed in the heat of passion. In determining that the State did not have such a burden, this Court stated the following:
"The presence of passion or provocation is not an essential element of the crime, rather it is a mitigatory factor in the nature of a defense. State v. Temple, 394 So.2d 259 (La.1981).
"In State v. Peterson, 290 So.2d 307 at 310 (La.1974), the Supreme Court determined that the presence of passion is in the nature of a defense and that the additional `element' of lack of passion need not be proven by the State in a murder prosecution. In so concluding, the court stated:
`Additionally, a review of our manslaughter statutes (that statute in effect at the time of this defendant's trial and the new manslaughter statute) reveals that the "sudden passion" or "heat of blood" provisions operate in a mitigatory fashion in a murder prosecution, not a great deal unlike provisions in the criminal law of other jurisdictions [footnote omitted] where such factors are considered to be "affirmative defenses" to a charge of murder. Our manslaughter statute, R.S. 14:31, provides: "... Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed..." (Emphasis added.)' "State v. Freeman, 447 So.2d at page 1158.
In the instant case, the evidence revealed that approximately ten minutes had elapsed between the time that the argument and fight inside the cafe had ended and the time that Loyd was stabbed by Collier. The evidence also revealed that neither party spoke to each other during this ten minute interval. While the evidence showed that Collier suffers from an *537 intermittent explosive disorder a psychiatrist's examination of Collier revealed that she was clearly aware of the wrongness of her action when she stabbed the victim.
In light of the fact that the State does not have the affirmative burden of proving that Collier did not act in sudden passion or heat of blood, and that Collier did not offer sufficient evidence to warrant such a finding of fact we will not reduce the verdict of second degree murder to manslaughter.
For these reasons this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
By this assignment Collier alleges that she was denied a fair trial because the trial judge excused too many potential jurors before jury selection and thus effectively denied her a fair cross section of the community from which to select her jury.
The trial court is vested with broad discretion and is authorized to excuse a person from jury service either prior to or after his selection for the general venire jury pool if such service would result in undue hardship or extreme inconvenience. The Court may take this action on its own initiative or on the recommendation of an official or employee designated by the Court. State v. Brown, 414 So.2d 726 (1982). See, C.Cr.P. Art. 783(B). The discretion to release prospective jurors in advance of voir dire examination is not to be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Edwards, 406 So.2d 1331 (La.1981). Collier makes no allegation of fraud or collusion, nor does the record give any indication of such, nor has there been any showing of prejudice. State v. Brown, supra; State v. Kirts, 447 So.2d 1 (La.App. 3rd Cir.1983). Therefore, the Court's action in releasing potential jurors prior to the commencement of jury selection, will not be disturbed as an abuse of discretion.
This assignment of error is without merit.
For the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
FORET, J., dissents being of the opinion that the evidence does not support a conviction of second degree murder but only a conviction of manslaughter.
NOTES
[1] By questioning Officer Remedies about his prior acquaintance with defendant, the defense brought that subject within the scope of the State's redirect examination. La.R.S. 15:281 reads that:

"The redirect examination must be confined to the subject matter of the cross-examination and to the examination of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."