493 So.2d 234 (1986)
STATE of Louisiana
v.
Gerard GAUDIN.
No. 86-KA-82/83.
Court of Appeal of Louisiana, Fifth Circuit.
July 23, 1986.
Rehearing Denied September 17, 1986.
*235 Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for State of La., plaintiff-appellee.
John Craft, Indigent Defender, Gretna, for Gerard Gaudin defendant-appellant.
Before BOWES and WICKER, JJ., and NACCARI, J. Pro Tem.
J. BRUCE NACCARI, Judge Pro Tem.
The defendant, Gerard Gaudin, was convicted on two separate bills of information, with nine (9) counts of violating LSA-R.S. 14:72Forgery. Defendant appeals his convictions and sentences based on five assignments of error. For reasons which follow, we affirm the conviction and vacate the sentences and remand to the district court for resentencing in conformity with La.C.Cr.P. art. 894.1
Originally, Gerard Gaudin was charged, on three separate bills of information,[1] with ten (10) counts of violating LSA-R.S. 14:72 Forgery. The bills of information stated that Gaudin forged Season Passports to the 1984 Louisiana World Exposition. On June 17, 1985 trial began; it was concluded on June 21, 1985 when the jury returned the following verdict: number 84-2800 not guilty; number 84-2245 guilty as charged to one count of forgery; number 84-3189 guilty as charged to eight (8) counts of forgery.
At the sentencing hearing held September 11, 1985, Judge LeBrun sentenced Gaudin to serve a term of three (3) years at hard labor for each of the nine counts. Additionally, LeBrun ordered that the sentences were to run consecutively for a total term of twenty-seven (27) years.
Between the first day of May, 1984 and the thirty-first day of August, 1984, the defendant was linked to a scheme which involved taking photographs of individuals and attaching the photograph to a card entitled "Season Passport" bearing the logo of the 1984 Louisiana World Exposition. The fraudulent Season Passports were then sold to individuals for eighty ($80.00) dollars each.
In August, 1984, a Jefferson Parish detective was visiting a photography studio on an unrelated matter when Gaudin offered to provide him with a Season Passport free of charge. When the officer questioned the authenticity of the Season Passport, Gaudin assured him that he had purchased genuine blank Season Passports from a travel agency. Gaudin asserted that the travel agency had over bought blank Season Passports believing the crowd would be larger at the Fair, he was, *236 therefore, able to get them for a very good price.
The officer, suspecting that the Season Passport he was given was forged, turned it over to an investigator with the New Orleans District Attorney's Office. Subsequently, an investigation ensued which involved an undercover officer who, while wired for sound and recording, visited the photography studio and purchased a Season Passport from Gaudin and an assistant for eighty ($80.00) dollars. The transcript of this recording reveals that Gaudin told the undercover agent the same story that the blank Season Passport was purchased from a Travel Agency. The next day, August 15, 1984, after the undercover agent unsuccessfully tried to purchase blank Season Passports from Gaudin, two arrest warrants, one for Gaudin and one for the other individual, and a search warrant were issued and executed.
Further investigation of the scheme revealed the indentities of several persons who had purchased Season Passports from Gaudin for eighty ($80.00) dollars each. These Season Passports were purchased at a private residence belonging to one of the purchasers. Gaudin did not have a assistant with him while he made these Season Passports.
Defendant presents five (5) assignments of error:
(1) The court erred in permitting testimony concerning prior bad acts and in denying the subsequent motion for a mistrial.
(2) The evidence presented against defendant was not sufficient to justify the verdict.
(3) The court erred in sentencing appellant to an excessive sentence and in ordering that the sentences on each count be served consecutively.
(4) The court erred in failing to grant a mistrial following a reference by the prosecution in argument to the failure of the defendant to take the stand.
(5) Also assigned as error are any and all errors patent on the face of the record.
Defense counsel's first assignment of error is based on the contention that the testimony of Eugene Fields, Chief of Detectives of the Jefferson Parish Sheriff's Office provided evidence of other crimes and constituted mandatory grounds for a mistrial. The testimony to which defense counsel refers is based upon statements made by Chief Fields during the prosecution's cross examination of the witness.
It must be noted that prior to the statement at issue being made, its impact and relevance was fully discussed by the judge and both parties. Defense counsel was admonished by the judge and the Assistant District Attorney not to broach the subject of how Gaudin knew Fields was a police officer if he did not want the prosecution to question Fields on it also.
During the presentation of the state's case, neither the state nor defense counsel asked Chief Fields if Gaudin knew Fields was a police officer. Thus, the subject remained closed and not available to the jury.
Subsequently, however, Fields was called to the stand by defense counsel specifically for the purpose of establishing that the defendant was aware of Field's position as a police officer.
[MR. WALKER:]
Q. And at the time Mr. Gaudin gave you that passport, did he know you to be a police officer?
[CHIEF FIELDS:]
A. Absolutely, yes sir.
Q. Did he know you to be a ranking police officer ...
A. Yes sir.
Q.... with the Jefferson Parish Sheriff's Office?
A. Yes sir.
. . . . .
Q. And you are certain in your own mind that Mr. Gaudin knew that you were a police officer during all of this?
A. Absolutely.
MR. WALKER:
No further questions.
*237 On cross-examination after further discussion of the matter, the state then elicited the following testimony:
MR. HONIG:
Q. Detective Fields, on cross-examinon direct examination, Mr. Walker asked you very carefully, `Are you certain that the defendant knew that you were a police officer,' and you said `Yes,' is that correct?
A. That's correct, sir.
Q. Okay. Tell the Court why you're certain that the defendant knew you were a police officer.
A. In the latter part of 1980 or early 1981, I'm not sure of the year, I was present at his apartment when detectives from my office executed a search warrant involving stolen property and subsequent to that, he was an inmate at the Parish Prison, worked as a Trustee at the motor pool and serviced my car.
Defendant argues that pursuant to La.C. Cr.P. art. 770 the testimony elicited from Fields by the state constitutes mandatory grounds for a mistrial. La.C.Cr.P. art. 770(2) prohibits reference by a judge, a district attorney or a court official, to other crimes by the defendant as to which evidence is not admissible under penalty of a mandatory mistrial. However, such a remark by a witness does not require a mistrial if the court is satisfied that an admonition to the jury is sufficient to assure the defendant a fair trial. La.C.Cr.P. art. 771; State v. Douglas, 389 So.2d 1263 (La.1980).
Louisiana jurisprudence has consistently held that a police officer is not a court official but merely a witness and any reference by the police officer to another crime committed by the defendant does not come under the mandatory mistrial provisions. State v. Gibson, 458 So.2d 525 (La.App. 4th Cir.1984); State v. Calzadilla, 455 So.2d 1244 (La.App. 4th Cir.1984). Although Fields clearly is not an officer of the court, a police officer's prejudicial remarks should be viewed with considerable concern as to the fairness of the trial and may require granting mistrial, especially if the remark was precipitated by or could have been precipitated by the district attorney. Nevertheless, the decision as to the necessity of granting a mistrial in such circumstances is left to the sound discretion of the trial court. State v. Douglas, supra; State v. Fournier, 465 So.2d 963 (La.App. 1st Cir.1985); State v. Collier, 474 So.2d 529 (La.App. 3rd Cir.1985); State v. Odds, 430 So.2d 1269 (La.App. 1st Cir.1983).
In the instant case, defense counsel called Fields as his witness which opened the door for the State to question Fields. It was defense counsel's questions on direct which emphasized the defendant's knowledge that Fields was a police officer. LSA-R.S. 15:280 states that when a witness has been sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case. LSA-R.S. 15:282 provides that the prosecutor has the right to rebut the evidence adduced by the defendant. This court has previously held that although the general rule is that evidence of extraneous offenses is inadmissible, matters which are relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses. State v. Grabert, 467 So.2d 1327 (La.App. 5th Cir.1985) writ denied 470 So.2d 125 (La.1985) reconsideration denied 474 So.2d 944 (La.1985).
It is apparent that Fields' testimony regarding how Gaudin knew he was a police officer was relevant and clearly testimony that the state could pursue. Based on the sequence of events preceeding Fields' testimony regarding the defendant's prior crimes and incarceration, we find that the present case does not reveal a manifest abuse of discretion warranting the substitution of our judgment for that of the trial judge. This issue is without merit.
Defense counsel states, in the second assignment of error in his appellate brief, that reviewing courts are charged with the responsibility of examining the record of the case on appeal to determine whether, as a matter of law, the evidence presented by the state was sufficient to justify the verdict rendered.
*238 The test for determining the sufficiency of evidence was first enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and has been followed by Louisiana jurisprudence. See State v. Langford, 483 So.2d 979 (La.1986) and State v. Captville, 448 So.2d 676 (La.1984). In order to afford due process, the evidence, viewed in the light most favorable to the prosecution, must be sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. A careful review of the record in the instant case, illustrates that the totality of the evidence provided by the state, including the substantial number of witnesses and the taped conversation of the defendant, is sufficient to support a conviction.
In the present case, the trial judge provided the following jury charge as to the elements of the crime of forgery:
Thus, in order to convict the defendant of forgery, you must find, number one, that the defendant falsely made or altered any part of a World's Fair Passport; number two, that the World's Fair Passport purported to have legal efficacy; and, number three, that the defendant acted with a specific intent[[2]] to defraud.
The evidence of the first element of the crime, that the defendant falsely made or altered any part of a Season Passport was provided by the direct testimony of several witnesses, including an undercover police officer and the Chief Of Detectives of the Jefferson Parish Sheriff's Office, as well as a taped recording of one of the transactions. The testimony adduced at trial revealed that the defendant was directly involved when all of the Season Passports at issue were actually made. No contradictory evidence was provided by the defense to show that Gaudin did not produce the Season Passports. Additionally, the state produced two witnesses (qualified by the court as experts in the limited area of Season Passports) that, after examining the Season Passports produced by Gaudin, testified they were forgeries. These witnesses were also asked to examine legitimate Season Passports. In both instances, the experts were able to distinguish between the forged and legitimate Season Passports.
The second element of the crime, that the Season Passports purported to have legel efficacy, was reflected by the fraudulent Season Passports themselves. As several of the witnesses actually entered the Fair site while using one of the forged Season Passports, it is obvious that the security guards on duty at the Fair site were deceived by them. Additionally, all of the fraudulent Season Passports made by Gaudin, due to their similarity to legitimate Season Passports purchased from D.H. Holmes or the Fair site, purported to be legitimate Season Passports. Thus, we find that the legal efficacy of the Season Passports made by Gaudin was proven on all counts.
The third element of the crime, that the defendant acted with the intent to defraud, is shown by the totality of the circumstances. In the instant case, Gaudin stated to all of the witnesses that he purchased the blank Season Passports from a travel agency. Defense counsel did not produce any testimony from the travel agency to support this theory. Gaudin was convicted of a series of crimes which took place between May 1, 1984 and August 31, 1984. During that time the Media was covering every aspect of the Louisiana World Exposition, including the availability of Season Passports. The sites where legitimate passports could be purchased were well publicized. The fact that these crimes took place over such an extended period of time support the state's argument that Gaudin was aware that although groups and corporations could purchase certificates that entitled them to obtain a valid Season Passport *239 at D.H. Holmes or the Fair site, no individuals had a legal right to sell the actual Season Passport. Although intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. LSA-R.S. 15:445; State v. Savoie, 448 So.2d 129 (La.App. 1st Cir. 1984); writ denied 449 So.2d 1345 (La. 1984).
Upon reviewing the entire record of evidence received at trial in the light most favorable to the prosecution, we find that any rational trier of fact could find that the state had proved every element of the crime, on all counts, for which the defendant was found guilty. This assignment lacks merit.
The defendant, in his third assignment of error, contends that his sentence of three (3) years at hard labor for each of the nine counts, which were imposed consecutively rather than concurrently, was an abuse of the trial court's discretion. This argument is based on the defendant's contention that the trial court did not state the reasons for consecutive sentences as opposed to concurrent sentences.
We find that the individual sentences, three (3) years on each count, clearly are not excessive as the maximum sentence under LSA-R.S. 14:72 is ten (10) years. As the individual sentences are at the lower end of the sentencing range, articulated reasons for each sentence pursuant to La. C.Cr.P. art. 894.1 are not mandated. However, the trial judge directed that the sentences were to run consecutively. Under La.C.Cr.P. art. 883, the sentencing judge may use his authority to impose either concurrent or consecutive sentences when a defendant is convicted of two or more offenses based on the same act or transaction or constituting parts of a common scheme or plan. La.C.Cr.P. art. 883 provides:
Art. 883. Concurrent and consecutive sentences
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Although the trial court has been provided with this authority by statute, there is a constitutional and jurisprudential limitation that sentences, whether consecutive or concurrent, not be excessive. A sentence is unconstitutionally excessive in violation of La. Const. of 1974, Article I, Section 20 if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Winzer, 465 So.2d 817 (La.App. 2nd Cir.1985); State v. Williams, 457 So.2d 902 (La.App. 3rd Cir. 1984). Although a sentence is within the limits established by statute, it may be held to be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). However, absent a sentence that shocks our sense of justice, the trial court judge is given wide discretion in the imposing of sentences. State v. Lanclos, 419 So.2d 475, 478 (La.1982).
As a general rule sentences served for crimes arising out of a single course of conduct are served concurrently instead of consecutively, however, Louisiana jurisprudence has never held that consecutive sentences are necessarily excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Littleton, 436 So.2d 500 (La.1983); State v. Molinario, 400 So.2d 596 (La.1981); State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La. 1983). Although La.C.Cr.P. art. 894.1 provides the trial court with general sentencing guidelines, additional factors must be considered to determine whether or not the sentence imposed in the instant case is excessive. This is due to the fact that the imposition of consecutive sentences for a *240 conviction arising out of a single course of criminal conduct requires particular justification. State v. Williams, supra; State v. Ortego, 382 So.2d 921 (La.1980); cert. denied 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Lewis, supra. Consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Sherer, 437 So.2d 276 (La.1983); State v. Jett, 419 So.2d 844 (La.1982); State v. Lewis, supra.
Additionally, in any review for an abuse of the trial court's discretion, the reviewing court may examine the sentences imposed for similar crimes by the same court and other courts. State v. Finley, 432 So.2d 243 (La.1983); State v. Tompkins, 429 So.2d 1385 (La.1982), affirmed and remanded 403 So.2d 644 (La.1981); State v. Thomas, 434 So.2d 530 (La.App. 2nd Cir.1983). We have carefully reviewed other sentences imposed and find that in comparison the sentence imposed in the instant case, on the face of the record before us, is not necessarily excessive. See generally: State v. Mitchell, 468 So.2d 3 (La.App. 2nd Cir.1985), writ denied 469 So.2d 987 (La. 1985) (Sentenced to four (4) years at hard labor on three (3) counts of forgery, each ordered to be served consecutively). State v. Stoner, 438 So.2d 1275 (La.App. 3rd Cir. 1983) writ denied 444 So.2d 118 (La.1984) (Convicted of three (3) counts of forgery and sentenced to six (6) years on each count with sentences to run consecutively).
In the instant case, the trial judge gave the following reasons at the sentencing hearing:
THE COURT:
... And it appears therefrom that you have been convicted, I think, four times, for felonies before, but whatever it is, whatever this report will speak for itself and it appears to me that you should be sentenced in accordance with what I have here. Therefore, I now sentence you to the Louisiana Department of Corrections to serve a term of three years for each conviction, and that would be at hard labor, to run consecutively to each other.
As I figure it, there is a total of nine counts that you are convicted on, which makes you eligible to serve and makes you amenable to serve a sentence of twenty-seven years at the Louisiana Department of Corrections at hard labor. See that the prisoner is remanded for the execution of the sentence. See that this...
It is apparent that the record before us does not contain a full statement of the trial court's reasons for sentencing. This may be due in part to the confusion regarding the pre-sentence investigation report. As the trial judge failed to state complete reasons for the imposition of the instant sentences, we are not able to review this argument fully to determine whether the imposition of these nine consecutive three (3) year sentences is excessive. When a trial judge fails to state on the record his considerations and the basis for the imposition of a particular sentence in accordance with La.C.Cr.P. art. 894.1, the sentence will ordinarily be set aside and remanded for resentencing in accordance with the mandatory requirements of the law. State v. Sherer, supra; State v. Gage, 399 So.2d 1174 (La.1981); State v. Ortego, supra.
While it appears, based on the record before us, that the imposition of the nine (9) consecutive three (3) year sentences for nine counts of forgery, arising out of what could be considered a single incident, common scheme or plan, may be harsh considering the nature of the crime; it is not necessarily excessive under the jurisprudence where there is an extensive record of prior felony convictions and other exacerbating circumstances. We therefore must remand for the trial court to resentence and provide particularized articulation of his reasons under La.C.Cr.P. art. 894.1.
For the fourth assignment of error, defense counsel contends that the court erred when it failed to grant a mistrial following a reference by the prosecution, in closing argument, to the failure of the defendant to take the stand.
*241 Jurisprudence in this state is well settled that a comment by the prosecution with respect to the failure of the accused to take the stand constitutes reversible error, whether the comment is direct, or so phrased that the inference is plain. State v. Bentley, 219 La. 893, 54 So.2d 137 (La. 1951). However, in order to mandate a mistrial, the inference must be plain that the remark was intended to bring the jury's attention to the failure of the defendant to testify. State v. Smith, 433 So.2d 688 (La.1983); State v. Boutte, 447 So.2d 1229 (La.App. 5th Cir.1984).
The following is an excerpt of the statement, to which defense counsel objects, made by the prosecution during closing argument:
There was no testimony from the defendantfrom the defendant's witnesses of what travel agency he was referring to in those tapes. Where is this travel agency? `I got them from a travel agency.' Where is the travel agent to testify? He toldyou heard his words, `I got them from a travel agency? Where is that travel agency? It doesn't exist, ladies and gentlemen. These are forgeries. The easiest thing he could've done was to call that travel agent and say `Yes, I gave them to Mr. Gaudin.' Of course not. Of course he didn't. Of course that travelthere's no such thing.
Immediately following the state's closing argument, defense counsel objected, stating that this statement alluded to the fact that the defendant had not taken the stand.
We have reviewed the entire record and find it apparent that the prosecutor merely stammered while uttering the sentence at issue. Several times throughout the trial, and other times during closing argument, the prosecutor stammered. Each time this occurred, the same typographical marks () were used by the court reporter to indicate a break in the continuity of the prosecutor's sentences. We find, therefore, that it is self-evident that the remark made by the prosecutor was not intended to bring the jury's attention to the fact that the defendant did not take the stand. There is no merit to this assignment.
Finally, defense counsel requests that this court review the record to determine if it contains errors patent.
Code of Criminal Procedure Article 920 provides: "The following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
We have thoroughly inspected the pleadings and proceedings in the record on appeal. Our inspection did not reveal any errors patent on the face of the record.
Accordingly, we affirm the defendant's convictions but vacate the sentences imposed and remand the case to the district court for resentencing with a full statement of reasons for the particular sentences imposed in conformity with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1.
CONVICTION AFFIRMED SENTENCE VACATED AND REMANDED FOR RESENTENCING IN COMPLIANCE WITH LA.C.CR.P. ART. 894.1
NOTES
[1] Bill of information 84-3189eight counts; Bill of information 84-2245one count; Bill of information 84-2800one count.
[2] The crime of forgery only requires a general intent, in this case, the trial judge issued a more stringent jury charge. The jury, when finding the defendant guilty as charged, apparently found grounds for specific intent. General intent is present whenever there is specific intent. LSA R.S. 14:10.