ON APPLICATION FOR REHEARING
PER CURIAM.
On December 16, 1985, this Court affirmed Johnnell Coolie’s four convictions and as many sentences, the primary conviction being for aggravated rape, for which Coolie received mandatory life imprisonment. 483 So.2d 1048. The other sentences ranged from 10 to 40 years at hard labor.
Coolie’s only assignment of error, initially, was that his sentences were excessive. He did not contend that his convictions were based on insufficient evidence and he did not argue that the identification procedure, whereby the victim identified appellant in a photographic lineup, later at a physical lineup and finally at trial, was legally defective in any way.
On rehearing, and subsequent to the filing of a supplemental assignment of error, we heard oral arguments on the identification issue. Specifically, Coolie, belatedly and through new counsel, states:
“The trial court erred in admitting, over objection, testimony concerning a suggestive photographic identification procedure and, in addition, in allowing evidence of later out-of-court and in-court identifications which were tainted by the original photographic procedure.”
The victim, a black woman, was raped by two black men on April 29, 1983. The first rapist, later identified as Coolie, made an unauthorized entry into the victim’s apartment where he threatened her with a pistol, tied her up, blindfolded her and physically assaulted her.
Coolie had knocked on the victim’s front door at approximately 8 a.m. and asked to *1294 see one Michelle Butler, a friend of the victim. The victim told Coolie that Michelle did not live there, whereupon the victim closed the door and returned to bed.
About 8:30 a.m., Coolie returned and asked for Michelle’s address. The victim testified that she advised Coolie that she would write the address down on a piece of paper, and she closed but did not lock the door and went to write down the address. The victim stated that Coolie then came inside with a pistol in his hand and told the victim not to scream or he would blow her head off. The rape and other crimes then occurred. A second person, subsequently-identified as Isaac Picot, entered the apartment minutes later and he also raped the victim and committed other crimes.
Almost three months later, information received by Jefferson Parish police implicated Coolie. A polaroid photograph was taken of Coolie, and it was placed with Polaroid photographs of five other black males and shown to the victim on July 25, 1983. Without hesitation, the victim identified Coolie.
Coolie’s attorney then filed a motion asking that he (Coolie) be put in a physical lineup “... to insure against a miscarriage of justice ...” Such a lineup was held on June 15, 1984. With Coolie’s counsel present, the victim, again without delay, picked out Coolie.
At the trial, police officer Susan Miller testified that just after the crimes had been committed, the victim identified the first rapist as having long front teeth with a gap in the center. She gave other physical characteristics of the first intruder.
Officer Miller took the polaroid photograph of Coolie, and his mouth is open. Two of the other persons in the lineup have slightly open mouths with just a bit of teeth showing, while three people in the lineup have closed mouths. Attached to Coolie’s latest brief are copies of the six photographs, each three and a half inches by two and a half inches, in color. The original photographs shown to the victim are in evidence, marked “D-5”, and they are about one-third smaller than the copies in Coolie’s brief.
Appellant believes this photographic lineup is unnecessarily and intentionally suggestive and that Coolie’s convictions should be reversed.
We do not know, of course, what prompted the victim to say that the first rapist had a gap in his front teeth. Perhaps she was excited, under emotional strain; or maybe she was mistaken. We do know, however, that the remainder of the victim’s description fits Coolie. She said the first rapist was about five feet, five inches tall with a short afro haircut, dark complexion and large eyes.
More importantly, the record does not indicate that there is any connection whatsoever between the victim’s identification of Coolie from the photographs on July 25, 1983, assuming, inuendo, that it was suggestive, and (1) her identification of him at the physical lineup on June 15, 1984 and (2) her positive identification of him at trial.
In his latest assignment of error, Coolie says that the June 15, 1984 physical lineup and the in-court identification were “tainted” by the original photographic procedure; and in his brief, Coolie suggests that the six photographs used on July 25, 1983 could have been shown again to the victim just before the physical lineup. We cannot say that the second and third identifications were influenced by the earlier display of photographs, and nothing in the record so indicates; and there is no evidence that the photographs were ever shown to the victim after July 25, 1983.
Two large photographs (8 x 10 inches) of the physical lineup are also in evidence, marked “D-l” and “D-2”, and in both pictures Coolie is standing, along with five other black males of similar height and general physical characteristics, with his mouth tightly closed. The victim, according to the testimony, immediately picked out Coolie as the first man to enter her domicile.
She said in the courtroom, looking directly at Coolie:
*1295 “I will never forget his face. I am positive that is him.”
During the victim’s cross-examination, she was again asked about her identification of Coolie. She replied:
“That’s the guy that came to my door twice. I looked him in the face, face to face and plus he came in the third time with a gun and I was face to face so I am more than sure. When I identified him his face stayed in my mind because I seen him three times.”
We have carefully considered the overall identification process and the totality of circumstances of this case, and we cannot say that there is the substantial likelihood of irreparable misidentification. The victim had the opportunity, thrice, to see Coolie; her attention was on him alone; her description, other than for the gap in the front teeth, was precise; and her identification of him, in every instance, was positive and straightaway. The photographic lineup took place three months and the physical lineup 11 months after the crimes were committed.
In deciding whether to suppress an identification, the courts must balance the reliability of the procedure against the corrupting influence of any suggestiveness. In State v. Stewart, 389 So.2d 1321 (La.1980), the Supreme Court of Louisiana stated:
“Reliability is seen by examining the five factors set forth in Neil v. Biggers, 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401 (1972)] ... which are articulted in Manson,[1] supra, and followed by this Court.”
These factors are:
(1) Opportunity of the victim to view the criminal,
(2) The witness’ degree of attention,
(3) The accuracy of any prior description,
(4) The level of certainty demonstrated at the confrontation; and
(5) The time between the crime and the confrontation.
Other than for the fact that the victim mistakenly placed a gap in Coolie’s front teeth, she (the victim) passed the five State v. Stewart tests.
Concluding, we are of the opinion that even if the photographic lineup was imper-missibly suggestive, and we do not say that it was, the later identifications each had an independent basis and were not tainted. See State v. Johnson, 389 So.2d 1318 (La.1980). We therefore adhere to our December 16,1985 opinion, affirming Coolie’s convictions and sentences.

. Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).